Erik A. Christiansen, USB # 7372
Jeffrey C. Corey, USB # 09938
**PARSONS BEHLE & LATIMER**
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
ecf@parsonsbehle.com
echristiansen@parsonsbehle.com
jcorey@parsonsbehle.com

PAUL R. BESSETTE
MICHAEL BILES
KING & SPALDING LLP
500 West 2nd Street, Suite 1800
Austin, Texas 78701
Telephone: 512.457.2050
Facsimile: 512.457.2100
pbessette@kslaw.com
mbiles@kslaw.com
(admitted *pro hac vice*)

**Attorneys for Defendants PolarityTE, Inc., David B. Seaburg, Jacob Alexander Patterson, Paul Mann, and Richard Hague**

# UNITED STATES DISTRICT COURT
## DISTRICT OF UTAH

| | |
|---|---|
| MARC RICHFIELD, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>vs.<br><br>POLARITYTE, INC., DENVER LOUGH, DAVID SEABURG, JACOB PATTERSON, PAUL MANN, and RICHARD HAGUE,<br><br>Defendants. | **DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED CLASS ACTION COMPLAINT**<br><br>Case No. 2:21-cv-00561-BSJ<br><br>Judge: Bruce S. Jenkins |

## TABLE OF CONTENTS

I.   Introduction ...................................................................................................................................1

II.  Key Facts Ignored by Plaintiffs .................................................................................................1

III. Plaintiffs Fail to Allege a Materially False or Misleading Statement or Omission ......................3

IV.  Plaintiffs Fail to Plead a Strong Inference of Scienter ................................................................6

V.   Plaintiffs Fail to Plead Loss Causation ....................................................................................10

VI.  Conclusion ..............................................................................................................................11

i

4857-8370-5390.v1

## TABLE OF AUTHORITIES

**Cases**                                                                                 **Page(s)**

*Abrams v. MiMedx Grp.. Inc.,*
    37 F. Supp. 3d 1271 (N.D. Ga. 2014) ................................................................................7

*In re Amgen Inc. Sec. Litig.,*
    544 F. Supp. 2d 1009 (C.D. Cal. 2008) ..............................................................................9

*In re Aratana Therapeutics Inc. Sec. Litig.,*
    315 F. Supp. 3d 737 (S.D.N.Y. 2018).................................................................................6

*In re Bristol-Myers Squibb Sec. Litig.,*
    No. CIV.A. 00-1990(SRC), 2005 WL 2007004 (D.N.J. Aug. 17, 2005)............................9

*Exkae Ltd. v. Domo, Inc.,*
    No. 2:19-CV-781-DAK-DAO, 2020 WL 7352735 (D. Utah Dec. 15, 2020) ...................4

*In re Gentiva Sec. Litig.,*
    932 F. Supp. 2d 352 (E.D.N.Y. 2013).............................................................................10

*In re Genzyme Corp. Sec. Litig.,*
    754 F.3d 31 (1st Cir. 2014) ...............................................................................................8

*Jacobsen v. Deseret Book Co.,*
    287 F.3d 936 (10th Cir. 2002) ...........................................................................................4

*In re Mammoth Energy Servs., Inc. Sec. Litig.,*
    No. CIV-19-522-J, 2021 WL 1851037 (W.D. Okla. Jan. 26, 2021) ...................................9

*Medina v. Clovis Oncology, Inc.,*
    215 F. Supp. 3d 1094 (D. Colo. 2017) ...............................................................................7

*In re Myriad Genetics, Inc.,*
    No. 219CV00707, 2021 WL 977770 (D. Utah Mar. 16, 2021)......................................7, 8

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund,*
    575 U.S. 175 (2015)..................................................................................................3, 4, 6

*In re PolarityTE, Inc. Securities Litigation,*
    No. 2:18-cv-00510, 2020 WL 6873798 (D. Utah, Nov. 22, 2020)..............................*passim*

*In re WageWorks, Inc., Sec. Litig.,*
    No. 18-CV-01523-JSW, 2020 WL 2896547 (N.D. Cal. June 1, 2020) ...............................9

4857-8370-5390.v1

**Statutes**

Private Securities Litigation Reform Act ........................................................................................1, 3

**Other Authorities**

21 C.F.R. § 1271.10(a) ................................................................................................................2

4857-8370-5390.v1

## I.    Introduction

The Motion to Dismiss should be granted. Plaintiffs' Opposition does not address the central argument supporting dismissal of the securities fraud claims in the Amended Complaint ("AC"), which is that nearly identical claims were previously dismissed in *In re PolarityTE, Inc. Securities Litigation*, No. 2:18-cv-00510, 2020 WL 6873798 (D. Utah, Nov. 22, 2020) ("*PolarityTE I*").  Plaintiffs do not attempt to explain how the alleged facts have changed from *PolarityTE I* or why this Court should deviate from the reasoning and holdings of the same.  Instead, Plaintiffs speculate and mischaracterize the alleged facts, which is not enough to meet the high pleading bar set by the Private Securities Litigation Reform Act ("PSLRA").  As in *PolarityTE I*, the Court should dismiss the AC because Plaintiffs fail to plead a material misstatement or omission made with an intent to deceive investors.

The Court can also dismiss the AC for failure to plead scienter or loss causation.  Plaintiffs have alleged no motive for fraud, no explanation for why a company would knowingly fail to correct issues to avoid a clinical hold on an expensive trial for its key product, and do not identify any witness or document that informed Defendants that PolarityTE lacked a good-faith basis for Section 361 registration.  Plaintiffs similarly fail to plead loss causation and do not allege that PolarityTE's various press releases revealed any "truth" to the market.  In particular, the Opposition entirely concedes that there is no loss causation for the Section 361 statements. Accordingly, the Motion should be granted.

## II.    Key Facts Ignored by Plaintiffs

Plaintiffs' Opposition ignores or mischaracterizes the following key facts:

First, FDA regulations allow for companies to register an HCT/P under Section 361 without prior consultation with FDA.  Dkt. 54-8 at 18.  No prior approval from the federal government is required for Section 361 registration.  *Id.*

Second, Plaintiffs incorrectly allege that "FDA advised PolarityTE that SkinTE was not properly registered under Section 361" and "should stop marketing SkinTE as a 361 HCT/P."  Dkt. 66 at 7.  There has never been a formal determination by FDA that SkinTE was improperly registered

1

under Section 361. The Company proactively engaged FDA in a voluntary and informal dialogue regarding SkinTE's registration status. Dkt. 54-18 at 1. Following those discussions, PolarityTE decided to pursue an IND application and BLA for the product—but FDA did not tell the Company to stop marketing SkinTE as a Section 361 product. Dkt. 54-9 at 22.

Third, FDA closed the Form 483 issued to PolarityTE in July 2018 with a "Voluntary Action Indicated" classification and took no enforcement action against the Company. Dkt. 54-16 at 2. The Company disclosed these facts to investors. Dkt. 54-5 at 16.

Fourth, FDA issued a clinical hold on PolarityTE's proposed clinical study in August 2021, PolarityTE submitted a response in December 2021, and the Agency promptly lifted the hold and approved the Company's IND application in January 2022. Dkt. 54-22. PolarityTE is now conducting its first clinical study for SkinTE under the accepted IND. Dkt. 54-35.

Fifth, regulation of HCT/Ps is subject to significant uncertainty. For this reason, FDA announced in late 2017 that it would allow companies to market an HCT/P under Section 361 even if the product did not meet all the requirements of 21 C.F.R. § 1271.10(a) so long as there were no reported safety concerns or potential significant safety concerns. Dkt. 54-7 at 3, 21. The purpose of the policy was to provide manufacturers time to determine whether to submit an IND application and prepare an application if necessary. *Id.* at 21.

Sixth, a court in this district already considered and ruled on the issues raised in this case in *PolarityTE I*, dismissing the matter with prejudice. 2020 WL 6873798, at *8–9. The court held that the Section 361 registration statements were not false or misleading because they were statements of opinion and plaintiffs did not plead any facts showing that the opinion lacked a factual basis. The court further held that there was no loss causation for the Section 361 statements. *Id.* at *9. Regarding the manufacturing facility statements, the court held that the Form 483 observations were immaterial, the FDA closed the matter with a VAI classification, and PolarityTE made improvements in response to the Form 483. *Id.* at *10–11.

2

### III.   Plaintiffs Fail to Allege a Materially False or Misleading Statement or Omission

The Court should dismiss Plaintiff's claims for failure to allege statements or omissions that were materially false or misleading.

**Forward-looking Statements.**  Defendants argued that 22 of the statements alleged in the AC are protected by the PSLRA safe harbor for forward-looking statements.  Dkt. 53 at 19–21.  The Opposition addresses only two, which relate to Section 361 registration, and thus concedes that the other 20 are protected by the PSLRA safe harbor.  Dkt. 66 at 19–22.  The Court can therefore dismiss those 20 statements.  AC ¶¶ 145, 151, 161, 167, 169, 176, 180, 184, 191–92, 194, 196 (forward-looking Form 483 statements); *id.* ¶¶ 142, 153, 159, 163, 172, 174, 182, 186 (forward-looking FDA enforcement discretion statements).

The Court can also dismiss the remaining two forward-looking Section 361 statements.  The Opposition argues the statements are not forward-looking because they refer to Defendants' presently held beliefs regarding registration.  This misconstrues Defendants' argument that "statements about *future* FDA action regarding SkinTE's registration status" in paragraphs 138 and 149 of the AC were forward-looking, which they clearly are.  Dkt. 53 at 20.  The only argument offered by the Opposition on this point is that Defendants knew SkinTE was not properly registered, but as explained in the section immediately below and in the scienter discussion that follows, Plaintiffs have failed to sufficiently plead that Defendants believed SkinTE was improperly registered under Section 361.

**Section 361 Registration Statements.**  The Opposition attempts to use *Omnicare* to argue that Defendants' Section 361 registration opinion is actionable because Defendants offered an opinion without first conducting a meaningful inquiry.  But there are no facts in the AC to support this speculation.  For example, the AC never alleges that PolarityTE failed to consult any experts regarding Section 361 registration, only that PolarityTE did not consult the FDA, which it was not required to do.  Instead, the AC tries to use confidential witness allegations to show that PolarityTE knew Section 361 registration was improper.  But *Omnicare* stands for the rule that vague allegations of doubts

3

expressed by a minority within an organization do not plead securities fraud. *See Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 190 (2015) ("Suppose … the issuer did not disclose that a single junior attorney expressed doubts about a practice's legality, when six of his more senior colleagues gave a stamp of approval. That omission would not make the statement of opinion misleading . . . .").

An on-point case from this district explains it well: "Every business will have employees that disagree on the correct strategy for growth, especially in businesses involved in emerging technologies with uncertain markets." *Exkae Ltd. v. Domo, Inc.*, No. 2:19-CV-781-DAK-DAO, 2020 WL 7352735, at *6 (D. Utah Dec. 15, 2020). Plaintiffs try to distinguish *Exkae* by arguing that the case was about "corporate strategy" and not "regulatory compliance, which is not so subjective." Dkt. 66 at 14. Plaintiffs are wrong in both respects. It is a matter of corporate strategy to decide which registration pathway to pursue. PolarityTE made an initial business decision to register SkinTE under Section 361 based on its understanding of how the product is made. The Company later made another business decision to submit an IND application rather than expend resources to support Section 361 registration, which the Company warned was uncertain. Dkt. 53 at 6–7. It is also incorrect to say that regulatory compliance "is not so subjective" in this case. HCT/P regulation has evolved over time and is subject to considerable uncertainty—hence the FDA's enforcement discretion policy.

**Form 483 Statements.** As an initial matter, it is nonsensical for the Opposition to argue that the Court cannot consider the letter from FDA imposing a clinical hold, a document that is "central to [Plaintiffs'] claims" and referenced in the AC. *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941 (10th Cir. 2002). The entire Form 483 theory of fraud depends on the (false) allegation that the clinical hold resulted from a failure to correct the Form 483 observations. The letter shows this is false.

*Potency Assay.* The Form 483 stated that PolarityTE did not have "written procedures for production and process controls designed to assure that the drug products have the identity, strength, quality, and purity they purport or are represented to possess." Dkt. 54-15 at 1. The Opposition

4

argues that the Clinical Hold Letter shows that those "written procedures" did not exist at the time of the IND application. Dkt. 66 at 15. This is pure speculation. That FDA asked for additional information on PolarityTE's proposed assay does not mean one did not exist in July 2021.

*Bacteriostasis and Fungistasis Testing.* The AC speculates that the "bacteriostasis and fungistasis" clinical hold issues "seem to be related" to Form 483 Observation 3, which was "Aseptic processing areas are deficient regarding the system for monitoring environmental conditions." The Clinical Hold Letter demonstrates that there is no such relationship because it does not reference monitoring of environmental conditions as a reason for the hold. The Opposition does not acknowledge this and instead retreats into further speculation about the Letter to manufacture a connection.

*Stability and Storage.* The Opposition's argument regarding the "stability and storage" issue fails for the same reason as its potency assay argument. The FDA's request for additional information in 2021 regarding the storage of harvested tissue does not mean that PolarityTE failed to correct Form 483 Observation 4. Put differently: an FDA request for additional information does not mean the data did not exist—assuming *arguendo* these are even the same issues, which they are not.

*Building Construction.* The Opposition claims that Defendants concede a failure to address Form 483 Observation 2. Dkt. 66 at 16. This is false. Defendants submit the Clinical Hold Letter to show that Plaintiffs' allegations regarding the hold are baseless, and the Letter demonstrates that the hold is unrelated to the "suitable construction" of buildings, which was the subject of Observation 2.

Finally, the Opposition does not engage at all with Defendants' argument that the Form 483 statements are immaterial because the issue closed with a VAI classification and Defendants disclosed the Form 483. This alone is fatal to the AC's theory of fraud, as the court in *PolarityTE I* held.

The Court also should dismiss the Form 483 statements because they are statements of opinion and corporate puffery. The Opposition claims the opinion statements were false because Defendants gave opinions in 2021 regarding the state of SkinTE's regulatory compliance while FDA supposedly took the opposite view in 2018. But the Form 483 was closed with a VAI classification,

5

4857-8370-5390.v1

Defendants addressed the observations, and a federal district court held in 2020 that the observations were immaterial. *PolarityTE I*, 2020 WL 6873798, at *10–11. Defendants' opinions regarding their manufacturing facilities and IND application therefore "fairly align[ed] with the information in the issuer's possession at the time." *Omnicare*, 575 U.S. at 189.

The Opposition's puffery arguments are likewise easily defeated. Plaintiffs cite no authority holding that references to a "timeline" mean a statement is not puffery, and the cases cited by Defendants are to the contrary. *See, e.g.*, *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 757 (S.D.N.Y. 2018) (dismissing as puffery a statement that a company "was 'proud' to be 'on track to have these products reach the market in 2016'").

**FDA Enforcement Discretion Statements.** The flaw in Plaintiffs' theory of falsity with respect to the FDA enforcement discretion statements is that the AC does not plead any insider knowledge on Defendants' part regarding the FDA's final decision on enforcement discretion, either with respect to PolarityTE specifically or manufacturers in general. The Opposition claims PolarityTE's decision to pursue an IND application shows the Company knew FDA would not allow continued marketing and sales of SkinTE after May 2021. This argument defies all common sense. The purpose of enforcement discretion is to allow marketing and sales of an HCT/P while a company prepares an IND application. Dkt. 54-7 at 21. PolarityTE's informal discussions with FDA and decision to prepare an IND application does not make Defendants' statements false—FDA never ordered the Company to stop selling SkinTE. Plaintiffs plead no facts showing that Defendants knew continued enforcement discretion was impossible at the time of the statements, and therefore only plead impermissible falsity by hindsight.

## IV. Plaintiffs Fail to Plead a Strong Inference of Scienter

**Section 361 and Form 483 Statements.** According to Plaintiffs, Defendants knew all along that PolarityTE's key product was improperly registered under Section 361 and an IND application would be necessary, knowingly failed for three years to correct simple issues that would ultimately

6

4857-8370-5390.v1

result in a hold on the clinical study proposed in the Company's expensive IND application, and concealed all of this information from investors for some unknown motive. The theory is ridiculous on its face. The more reasonable inference is in Defendants' favor: Defendants believed SkinTE was properly registered under Section 361, extensively warned investors that the FDA may disagree, pursued a different business strategy following informal dialogue with the FDA, and ultimately believed that the IND application would succeed.

The Opposition's only response to this inference in Defendants' favor comes in the form of insignificant distinctions of the cases cited by Defendants. But Defendants' cases are united by a common theme: absent compelling facts to the contrary, it is much more likely that companies spending millions to prepare a product for FDA approval believe in good faith that their efforts will be successful, than the alternative that they would expend the effort to obtain regulatory approval knowing that their efforts would be futile. *See* Dkt. 53 at 23–24.

Grasping at straws, the Opposition cites a case it claims to be "more analogous," *Abrams v. MiMedx Grp.. Inc.*, 37 F. Supp. 3d 1271 (N.D. Ga. 2014). But the defendant in that case "did not disclose that the FDA performed an on-site inspection in 2012 to scrutinize whether the injectable products were indeed 361 HCT/Ps." *Id.* at 1273. There is no analogous allegation here.

Finally, the Opposition argues that the Form 483 shows scienter because it is FDA "guidance" that Defendants ignored. Dkt. 66 at 25–38. The cases cited by Plaintiffs show why this argument fails. The guidance in both cases was very specific and related to how a drug sponsor should present clinical trial data. *See In re Myriad Genetics, Inc.*, No. 219CV00707, 2021 WL 977770, at *19 (D. Utah Mar. 16, 2021) ("Plaintiffs allege that . . . FDA guidance required a statistical adjustment [for clinical trial data]. . . but that Myriad did not perform the required adjustment."); *Medina v. Clovis Oncology, Inc.*, 215 F. Supp. 3d 1094, 1126–27 (D. Colo. 2017) (discussing guidance on how to present clinical trial data on "predictive potential" of a cancer drug's clinical benefits). Here, the "guidance" alleged by Plaintiffs is the Form 483. If anything, *Myriad* and *Clovis* demonstrate why it is nonsensical to argue

7

that a Form 483 received in 2018 is FDA "guidance" regarding an unrelated IND application submitted three years later. Instead, the reasoning of *Genzume* applies. *See In re Genzyme Corp. Sec. Litig.*, 754 F.3d 31, 42 (1st Cir. 2014) (explaining that there was no inference of scienter based on a Form 483 where it made no mention of the FDA drug approval process).

**FDA Enforcement Discretion Statements.** The Opposition spends exactly one paragraph on this topic, cites no authority in support of its arguments, and does not attempt to distinguish the cases cited by Defendants. The only argument made is that Defendants did not actually believe it was possible to continue selling SkinTE after May 2021. But as argued throughout this Reply, Plaintiffs plead no facts showing Defendants had such a belief.

**Confidential Witnesses.** The Opposition concedes that none of the confidential witnesses report any meetings with Defendants or receipt by Defendants of any reports that would show actual knowledge or recklessness of falsity. Dkt. 66 at 26–27. This alone is fatal to Plaintiffs' claims. The Opposition tries to salvage its claims by arguing that it was "widely known" within PolarityTE that Section 361 registration was improper. AC ¶ 97. But all the AC alleges is that in late 2019 the Company discussed its options with respect to registration of SkinTE—which makes sense given the Company's informal dialogue with FDA at that time. It does not mean that any prior statements of opinion regarding Section 361 registration were made with actual knowledge or severe recklessness of falsity—that would be falsity by hindsight.

**Dr. Lough.** The Opposition reiterates the AC's speculation about Dr. Lough based on his invention of SkinTE and speculation by confidential witnesses, Dkt. 66 at 29–30, but entirely concedes Defendants' argument that the AC only pleads a sincerely held belief on Dr. Lough's behalf regarding Section 361 registration as the inventor of SkinTE. Dkt. 53 at 27–28. Even if unnamed employees and one investor expressed their disagreement to Dr. Lough, that is not enough to plead actual knowledge on his part that Section 361 registration was inappropriate or a reckless disregard of the same. *See Myriad*, 2021 WL 977770, at *9 (finding recklessness where plaintiffs alleged a defendant

8

acknowledged a lack of validation of a drug's effectiveness); *In re Bristol-Myers Squibb Sec. Litig.*, No. CIV.A. 00-1990(SRC), 2005 WL 2007004, at \*30 (D.N.J. Aug. 17, 2005) (finding recklessness where plaintiffs had multiple internal e-mails showing defendants' knowledge of issues with the company's clinical trials); *In re Amgen Inc. Sec. Litig.*, 544 F. Supp. 2d 1009, 1029 (C.D. Cal. 2008) (defendants had actual knowledge of materials used to train salespeople on illegal marketing techniques).

Neither does Dr. Lough's departure from PolarityTE establish actual knowledge or recklessness. In both cases cited by the Opposition, the terminations directly related to the subject of the allegedly false or misleading statements. *See In re Mammoth Energy Servs., Inc. Sec. Litig.*, No. CIV-19-522-J, 2021 WL 1851037, at \*4 (W.D. Okla. Jan. 26, 2021) (firing of a president for alleged bribery created an inference of scienter on behalf of two other executives, who made statements regarding a contract allegedly obtained through the president's bribe); *In re WageWorks, Inc., Sec. Litig.*, No. 18-CV-01523-JSW, 2020 WL 2896547, at \*7 (N.D. Cal. June 1, 2020) (involving the removal of executives involved in the issuance of allegedly false financial statements, which were the subject of the securities fraud lawsuit). In contrast, the AC does not allege that Dr. Lough's separation from PolarityTE has any relationship to the Section 361 statements, and even acknowledges that the reason for his departure is unknown. AC ¶ 95.

**Additional Scienter Allegations.** The remainder of the Opposition's scienter discussion simply repeats the allegations of the AC regarding the Defendants' positions, PolarityTE's size, and the Company's core operations without addressing Defendants' arguments that all the allegations are variations of the "must have known" theory of scienter that courts across the country have uniformly rejected. Instead, the Court should adopt the approach that Plaintiffs urge, which is to look at all the allegations together. Dkt. 66 at 32–33. Such a perspective will only reinforce the conclusion that the inference in Defendants' favor regarding scienter completely overwhelms the AC's allegations.

4857-8370-5390.v1

### V.      Plaintiffs Fail to Plead Loss Causation

The Opposition entirely concedes Defendants' argument that the court in *PolarityTE I* correctly held that the market was already aware of the Section 361 registration allegations based on news articles published in July 2018.  Because Plaintiffs concede this point, the Court can dismiss all the Section 361 statements on this basis alone.[1]

Regarding the enforcement discretion disclosures, the market was already aware of the upcoming end of enforcement discretion and Defendants disclosed that sales may have to end. Similarly, the market was aware of both the Form 483 observations and the potential for a clinical hold based on the Company's previous disclosures.  Plaintiffs offer no response to the risk materialization cases cited by Defendants and therefore concede this argument.  *See* Dkt. 66 at 34.

Finally, Plaintiffs claim there is no requirement to "disaggregate losses" at the pleading stage, but this is not Defendants' argument.  Loss causation is "not adequately pled simply by allegations of a drop in stock price following an announcement of bad news if the news did not disclose the fraud." *In re Gentiva Sec. Litig.*, 932 F. Supp. 2d 352, 384 (E.D.N.Y. 2013).  Defendants' argument is that Plaintiffs have not pleaded that the press releases disclosed a fraud because there is no connection between the Form 483 observations and the clinical hold, as shown by the Clinical Hold Letter, and because the market was already aware of the Section 361 allegations and the Form 483 observations because of news reports and the prior litigation in *PolarityTE I*.  The Court can therefore dismiss the AC for failure to adequately plead a decline in stock price due to the revelation of fraud.

---

[1] Plaintiffs claim that Defendants have not contested the disclosures in paragraphs 142 and 208 of the AC, but this is false.  Defendants cited paragraph 142 on pages 31 and 32 of their Motion to Dismiss and then argued that the disclosure was not corrective because the market was already aware of the Section 361 registration allegations.  Regarding paragraph 208, the AC alleged in paragraph 206 that the conference call described in paragraph 208 was a corrective disclosure. Defendants cited paragraph 206 on page 31 of their Motion to Dismiss and argued there was no corrective disclosure.

4857-8370-5390.v1

## VI.   Conclusion

For all the reasons stated above, the Court should dismiss the Amended Complaint with prejudice.

Dated this 11th day of August, 2022.

FOR THE DEFENDANTS:

/s/ *Jeffrey C. Corey*
Erik A. Christiansen
Jeffrey C. Corey
PARSONS BEHLE & LATIMER, LLP

Paul R. Bessette (admitted *pro hac vice*)
Michael J. Biles (admitted *pro hac vice*)
KING & SPALDING, LLP

*Attorneys for Defendants PolarityTE, Inc., David B.
Seaburg, Jacob A. Patterson, Paul Mann, and Richard Hague*

11

4857-8370-5390.v1

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a true and correct copy of the foregoing was served upon all parties of record via the U.S. District Court for the District of Utah's Electronic Filing System on August 11, 2022.

/s/ *Jeffrey C. Corey*

12