# APPENDIX – TABLE OF FALSE STATEMENTS

| Complaint Paragraph | Date | Location | Makers | Statement | Reasons it is misleading |
|---|---|---|---|---|---|
| 111 | 1/30/2018 | 2017 10-K | Lough | ***Efficient Regulatory Pathway***. We believe our products and product candidates, including ***SkinTE,*** are ***appropriately regulated by the FDA as 361 HCT/Ps,*** which provides us with the potential to register and list products with the FDA, and ***begin commercializing quickly*** and efficiently. | • Lough, and therefore PolarityTE, did not actually believe SkinTE was properly registered under Section 361. PolarityTE knew that its product was not "minimally manipulated" – it turned solid skin into liquid, white paste. PolarityTE knew its product used growth factors. PolarityTE knew its SkinTE could not qualify for the Section 361 pathway.<br>• Lough suppressed discussion or disclosure regarding whether SkinTE was properly registered under Section 361. |

| | | | | | |
|---|---|---|---|---|---|
| 114 | 1/30/2018 | 2017 10-K | Lough | Unlike products regulated by the FDA under the Federal Food, Drug, and Cosmetic Act (the "FD&C Act") and/or the Public Health Service Act as drugs, devices, or biologics, which require multi-phase clinical trials and premarket approvals, our SkinTE product is regulated by the FDA as human cells or tissues intended for implantation. | • Did not meet the criteria for Section 361 and therefore is a false statement of fact, not opinion. |
| 116 | 1/30/2018 | 2017 10-K | Lough | We have designed and developed manufacturing processes and quality systems that allow us to receive a specimen, qualify the incoming tissue, process and manufacture the cell/tissue product, and perform outgoing quality control and quality assurance work prior to shipping. | • They lacked a potency assay and therefore it was impossible to perform outgoing quality control and quality assurance |
| 119 | 1/14/2019 | 2018 10-K | Lough & Mann | We have designed and developed manufacturing processes and quality systems that allow us to receive a specimen, qualify the incoming tissue, process and manufacture the cell/tissue product, and perform outgoing quality control and quality assurance work prior to shipping. | • They lacked a potency assay and therefore it was impossible to perform outgoing quality control and quality assurance |
| 121 | 1/14/2019 | 2018 10-K | Lough & Mann | We believe our FDA-registered *SkinTE* and OsteoTE products *satisfy applicable criteria for regulation as a 361 HCT/P and are therefore exempt from FDA requirements for premarket approval or clinical studies*. | • SkinTE did not qualify as a section 361 HCT/P. The Company also knew as much. For example, it knew its product was not minimally manipulated because during the |

| | | | | | |
|---|---|---|---|---|---|
| | | | | | manufacturing process it took solid skin and turned it into a liquid, white paste and combined it with a number of additives, including growth factors.<br>• Lough suppressed discussion or disclosure regarding whether SkinTE was properly registered under Section 361. |
| 125 | 3/12/2020 | 2019 10-K | Seaburg, Hague & Mann | We have designed and developed manufacturing processes and quality systems that allow us to receive a specimen, qualify the incoming tissue, process and manufacture the tissue product, and perform outgoing quality control and quality assurance work prior to shipping. | • They lacked a potency assay and therefore it was impossible to perform outgoing quality control and quality assurance |
| 128 | 3/12/2020 | 2019 10-K | Seaburg, Hague & Mann | We believe that *SkinTE* and OsteoTE *qualify as 361 HCT/Ps*. Other products we are developing are being evaluated with respect to regulatory classification, and we will prepare for any pathway of manufacturing or regulation that is required. | • Former Employee 2 revealed that by this time, they had already decided to register under 361.<br>• Was contradicted by FDA Guidance that grinding into particulate matter is not minimally manipulated |

| 131 | 3/12/2020 | 2019 10-K | Seaburg, Hague & Mann | The core technology of SkinTE is minimally polarized functional units ("MPFUs"). MPFUs are multi-cellular micro-aggregates that act as an intrinsic, regenerative bio-reactor capable of expanding, proliferating, and synthesizing cells, materials, factors, and systems necessary for regenerating full-thickness, three-dimensional tissue. **In the application of SkinTE to date we have been able, when applicable to a particular case, to collect from a patient a skin tissue sample 5 $cm^2$ in size or less and produce enough SkinTE to treat a wound 30x greater in size than the skin collected.** SkinTE allows the patient to regenerate full-thickness, three-dimensional skin (similar to a FTSG) by contributing a much smaller skin sample, while reducing the scarring and morbidities associated with STSGs, and producing results we believe to be superior to STSGs and synthetic skin substitutes. | • misleading for claiming that PolarityTE was able to determine that a 5 cm2 or smaller sample was sufficient to produce enough SkinTE to treat a wound 30x greater in size than the skin collected, because PolarityTE lacked a potency assay for SkinTE, as the FDA informed PolarityTE after its inspection in July of 2018 |

| | | | | | |
|---|---|---|---|---|---|
| 137 | 4/30/2020 | press release | | To focus on pursuit of the BLA, the Company plans to substantially reduce commercial operations and other functions to conserve capital and significantly decrease cash burn. ***FDA has not asked the Company to stop marketing SkinTE as a human cell, tissue, or cellular and tissue-based product regulated solely under Section 361 of the Public Health Service Act (i.e., a 361 HCT/P). SkinTE will remain available under a limited sales and marketing program, subject to the Company's future discussions with FDA***. The decision to focus on a BLA for SkinTE and limit commercial operations proactively addresses FDA feedback on the regulatory pathway for SkinTE, the high costs associated with maintaining a commercial footprint, and the headwinds associated with the COVID-19 pandemic. | • concealed that the FDA did not only provide "feedback," but in fact issued a preliminary assessment was that SkinTE did not meet Section 361's requirements. <br><br> • misleading because Defendants did not disclose that PolarityTE could only sell SkinTE going forward because of the FDA's temporary enforcement discretion policy. Defendants knew that that once the temporary policy ended, they would have to stop all commercial sales until they obtained a license under the 351 pathway. Despite this, Defendants continued misleading investors into believing that the Company could sell SkinTE as a 361 HCT/P indefinitely when, in truth, the Company could only sell SkinTE until the end of enforcement discretion |

| | | | | | the following year. |
|---|---|---|---|---|---|

| 140 | 5/11/2020 | 1Q20 10-Q | | When SkinTE was registered and listed with the FDA, we believed **SkinTE was appropriately regulated solely under Section 361** of the Public Health Service Act and Part 1271 of Title 21 of the Code of Federal Regulations (i.e., as a so-called "361 HCT/P") and that, as a result, no premarket review or approval by the FDA was required. **We still believe that SkinTE is appropriately regulated as a 361 HCT/P.** However, following informal, voluntary discussions between FDA and the Company, and preliminary views expressed by FDA received on April 21, 2020, we believe that **the FDA may disagree with our interpretation** if we sought a formal designation of SkinTE's regulatory classification, and that it therefore is prudent to pursue a strategy to file an investigational new drug application ("IND") and thereafter a biologics license application ("BLA") for SkinTE. | misleading because it claimed that PolarityTE still believed that SkinTE was appropriately registered under 361 and that therefore there continued to exist the prospect of convincing the FDA of that fact. Defendants knew otherwise. By including this misleading statement in the 1Q20 10-Q, and then causing the 1Q20 10-Q to be filed with the SEC for public viewing and releasing the 1Q20 10-Q on their website, Defendants Seaburg, Patterson and PolarityTE made a false and misleading statement that misled the public. |

| | | | | | |
|---|---|---|---|---|---|
| 142 | 11/9/2020 | Investor Call | Hague | On the dosing side, the beauty of SkinTE has always been that we could take a relatively small harvest and treat significant open wound. We've proven that both in our real-world experience and pre-clinically, but we need to put just a little bit more work into categorizing that and validating that more specifically. So that ultimately, we can come to FDA and say that going forward, a harvest size of 'x' equates to a certain yield or dosage of product, which can then treat a certain wound size range of 'x' to 'y'. We need to do that a little bit more formally, as I've said, and to validate the work that we've done previously. | misleading because PolarityTE lacked any adequate potency assay and therefore could not prove the appropriate dosage of SkinTE for a wound of a specific size. As late as September of 2021, PolarityTE lacked a potency assay that was able to assess the actual biological function of the cells that compose SkinTE, and this lack of a potency assay, among other things, is what caused the FDA to find PolarityTE's IND application to be "clearly deficient." |
| 145 | 3/30/2021 | 2020 10-K | Seaburg & Patterson | We continued to sell SkinTE as a 361 HCT/P in 2020 and into 2021 in reliance on our view that *there is a reasonable basis for regulating SkinTE as a 361 HCT/P* and also in reliance on the enforcement discretion position stated in the policy framework. | misleading because SkinTE did not qualify as a Section 361 HCT/P and PolarityTE did not and could not believe otherwise. By including this misleading statement in the 2020 10-K, and then causing the 2020 10-K to be filed with the SEC for public viewing and releasing the 2020 10-K on their website, Defendants Seaburg, Patterson and PolarityTE made a false and misleading statement that misled the public. |

| 147 | 3/30/2021 | 2020 10-K | Seaburg & Patterson | Throughout 2020 we maintained at our facility in Salt Lake City, Utah, manufacturing processes and quality systems that allow us to receive a skin specimen, qualify the incoming tissue, process and manufacture the SkinTE tissue product, and perform outgoing quality control and quality assurance work prior to shipping. | |