ERIK A. CHRISTIANSEN, USB # 7372
JEFFREY C. COREY, USB # 09938
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
ecf@parsonsbehle.com
echristiansen@parsonsbehle.com
jcorey@parsonsbehle.com

PAUL R. BESSETTE
MICHAEL BILES
KING & SPALDING LLP
500 West 2nd Street, Suite 1800
Austin, Texas 78701
Telephone: 512.457.2050
Facsimile: 512.457.2100
pbessette@kslaw.com
mbiles@kslaw.com
(admitted *pro hac vice*)

*Attorneys for Defendants PolarityTE, Inc., David B. Seaburg, Jacob Alexander Patterson, Paul Mann, and Richard Hague*

---

## UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| MARC RICHFIELD, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> POLARITYTE, INC., DENVER LOUGH, DAVID SEABURG, JACOB PATTERSON, PAUL MANN, and RICHARD HAGUE, <br><br> Defendants. | **DEFENDANTS' REPLY BRIEF IN SUPPORT OF MOTION TO DISMISS THE SECOND AMENDED CLASS ACTION COMPLAINT** <br><br><br> Case No. Case No. 2:21-cv-00561-BSJ <br><br><br> Hon. Bruce S. Jenkins |

4874-6615-6870.v3

## TABLE OF CONTENTS

I.  Introduction ....................................................................................................................................1

II.  Plaintiffs Concede that Defendants Disclosed All Material Information ....................................2

III.  Plaintiffs Fail to Plead Falsity with Particularity ......................................................................2

IV.  Plaintiffs Fail to Plead a Strong Inference of Scienter ...............................................................8

V.  Plaintiffs Fail to Plead Loss Causation ....................................................................................10

VI.  Conclusion ................................................................................................................................11

i

## TABLE OF AUTHORITIES

**Cases**

*California Pub. Emps.' Ret. Sys. v. Chubb Corp.*,
   394 F.3d 126 (3d Cir. 2004)................................................................................................4
*City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*,
   2013 WL 566805 (N.D. Ill. Feb. 13, 2013) ........................................................................5
*Exkae Ltd. v. Domo, Inc.*,
   2020 WL 7352735 (D. Utah Dec. 15, 2020) .......................................................................4
*Frater v. Hemispherx Biopharma, Inc.*,
   996 F. Supp. 2d 335 (E.D. Pa. 2014) ............................................................................. 9, 10
*Gillis v. QRX Pharma Ltd.*,
   197 F. Supp. 3d 557 (S.D.N.Y. 2016) ................................................................................4
*Immanuel Lake v. Zogenix, Inc.*,
   No. 19-cv-01975, 2020 WL 3820424 (N.D. Cal. Jan. 27, 2020) .......................................9
*In re Curaleaf Holdings, Inc. Sec. Litig.*,
   519 F. Supp. 3d 99 (E.D.N.Y. 2021) ..................................................................................2
*In re Ibis Tech. Sec. Litig.*,
   422 F. Supp. 2d 294 (D. Mass. 2006)................................................................................10
*In re Immucor, Inc. Sec. Litig.*,
   2011 WL 2619092 (N.D. Ga. June 30, 2011) .....................................................................5
*In re Mammoth Energy Servs., Inc. Sec. Litig.*,
   No. CIV-19-522-J, 2021 WL 1851037 (W.D. Okla. Jan. 26, 2021)..................................10
*In re PolarityTE, Inc., Sec. Litig.*,
   No. 2:18-cv-00510, 2020 WL 6873798 (D. Utah, Nov. 22, 2020) .....................................3
*In re WageWorks, Inc., Sec. Litig.*,
   No. 18-CV-01523-JSW, 2020 WL 2896547 (N.D. Cal. June 1, 2020) ..............................10
*Mulligan v. Impax Labs., Inc.*,
   36 F. Supp. 3d 942 (N.D. Cal. 2014)..................................................................................5
*Nakkhumpun v. Taylor*,
   782 F.3d 1142 (10th Cir. 2015) ..........................................................................................3
*Nguyen v. Radient Pharms. Corp.*,
   2011 WL 5041959 (C.D. Cal. Oct. 20, 2011)......................................................................9
*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015) ............................................................................................................4
*Schaeffer v. Nabriva Therapeutics plc*,
   2020 WL 7701463 (S.D.N.Y. Apr. 28, 2020)......................................................................6
*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
   551 U.S. 308 (2007) ............................................................................................................8

**Statutes**

15 U.S.C. § 78u–4(b)(1)....................................................................................................2
15 U.S.C. § 78u-5(i)(1)(B), (D) .......................................................................................7

4874-6615-6870.v3

## I.      Introduction

Despite the Court's clear instruction that Plaintiffs amend their deficient complaint to plead the alleged false statements "with specificity," Plaintiffs' Second Amended Complaint ("SAC") still fails to state a claim for securities fraud. It now should be dismissed with prejudice.

First, the SAC does not adequately allege the element of falsity (*i.e.*, a misstatement or omission) because PolarityTE repeatedly disclosed the facts that Plaintiffs claim were concealed from investors. The Company warned before and after self-registering SkinTE that FDA's regulation of HCT/Ps was evolving and that the Agency could disagree with the Company's assessment.

The Company also disclosed receipt of the FDA inspector's observations in Form 483 and the Company's response. Dkt. 54-5 at 16. When the Company submitted its investigational new drug ("IND") application, it told investors that the FDA could impose a clinical hold on the studies proposed for SkinTE. Dkt. 54-20 at 1. Moreover, the Company said that it was working to develop a potency assay to validate dosing for SkinTE. *See, e.g.*, SAC ¶ 142. And while PolarityTE explained that it planned to seek permission to continue selling SkinTE on a limited basis after the FDA enforcement discretion period ended, it cautioned investors that "it is not customary." Dkt. 54-9 at 22, 33–36.

Second, the SAC does not sufficiently allege the necessary strong inference of scienter. The SAC does not cite a single meeting, conversation, or document showing that any individual defendant knew or was reckless in not knowing that any challenged statement or omission was false. There are no particularized allegations that the individual defendants were in receipt of information indicating that PolarityTE's Section 361 registration was improper—only vague assertions that some unnamed individuals may have held contrary opinions. None of the anonymous witnesses allege personal involvement in the discussions leading up to registration of SkinTE in August 2017. The SAC is similarly devoid of any particularized facts or statements from anonymous witnesses showing that PolarityTE lacked a potency assay at the time of the challenged statements. Finally, there is no allegation that, at the time PolarityTE told investors it would seek permission from the FDA to continue SkinTE sales past the end of enforcement discretion, any defendant knew the FDA would

1

deny that request. For these reasons and more, the Court should dismiss the SAC with prejudice.

## II.    Plaintiffs Concede that Defendants Disclosed All Material Information

The Court can dismiss all the statements challenged in the SAC because Defendants disclosed all material information to investors. Plaintiffs must plead facts showing that Defendants made a materially misleading statement of fact or failed to state a fact necessary to make a statement not materially misleading. *See* 15 U.S.C. § 78u–4(b)(1). The converse of this rule is that there can be no fraud claim where Defendants disclosed all material facts to investors. *See In re Curaleaf Holdings, Inc. Sec. Litig.*, 519 F. Supp. 3d 99, 107 (E.D.N.Y. 2021).

Plaintiffs do not address Defendants' citation of multiple on-point public disclosures that address the information that Plaintiffs claim was withheld from investors. Specifically:

- Defendants warned that HCT/Ps were subject to an evolving regulatory regime and that the FDA or others may disagree with PolarityTE's registration opinion.
- Defendants cautioned that issues may arise, such as chemistry, manufacturing, and control issues, that could affect PolarityTE's IND application and cause a clinical hold.
- Defendants disclosed the Form 483 to investors.
- Defendants told investors that PolarityTE was still working on its potency assay.
- Defendants told investors that SkinTE sales would end in May 2021 without continued enforcement discretion and that continued discretion was not expected.

Plaintiffs do not address any of Defendants' authorities or any of the disclosures cited above, thereby conceding that they cannot plead falsity because PolarityTE "publicly and repeatedly acknowledged the very information that plaintiffs contend it concealed." *Curaleaf Holdings*, 519 F.Supp.3d at 107. On this basis alone, the Court can dismiss the SAC with prejudice.

## III.    Plaintiffs Fail to Plead Falsity with Particularity

The Court can also dismiss all the challenged statements because Plaintiffs have failed to plead falsity with the particularity required by the Private Securities Litigation Reform Act ("PSLRA").

**Section 361 Statements.** The Court can dismiss the Section 361 statements because they were either true when made or are statements of opinion that were sincerely and reasonably held.

Regarding the statement from PolarityTE's 2017 10-K, the Court can dismiss it because it was

true when made. The statement reports that as of January 30, 2018, SkinTE was regulated under Section 361. SAC ¶ 114. This was true at the time—SkinTE was registered under that section—which is why the *PolarityTE I* court dismissed similar statements for failure to allege falsity. *See In re PolarityTE, Inc., Sec. Litig.,* No. 2:18-cv-00510, 2020 WL 6873798, at *8 (D. Utah, Nov. 22, 2020).

Plaintiffs try to claim that *PolarityTE I* does not apply because the court dismissed statements that "SkinTE was *registered* under Section 361." Opp. at 7. Plaintiffs want the Court to believe there is a difference between "registration" and "regulation" under Section 361, but they do not and cannot offer any authority to support this bogus claim. The rest of Plaintiffs' argument regarding the statement in ¶ 114 is similarly incoherent and unpersuasive. Plaintiffs claim that the statement, "our SkinTE product is regulated by the FDA as human cells or tissues intended for implantation" was false because it "says more than that SkinTE was registered under Section 361." Opp. at 5. Plaintiffs claim that Defendants were also stating "that SkinTE's Section 361 registration was **proper**." *Id.* at 6. The statement plainly says no such thing. And Plaintiffs cite no authority to support this assertion.

Plaintiffs then devote the next five paragraphs on pages 6 and 7 to the argument that the statement in ¶ 114 was false because "SkinTE was not actually regulated by Section 361." This is a tortuous mischaracterization of the statement. The statement was not, as Plaintiffs claim, a "statement of legal compliance." Opp. at 6. It was a statement of literal, historical fact—SkinTE was registered under Section 361 and therefore regulated under that section.

The Court should dismiss the statements of opinion in ¶¶ 111, 121, 128, 140, and 145 (*i.e.*, PolarityTE's statements that it "believed" SkinTE was appropriately registered) because Plaintiffs have not sufficiently alleged Defendants did not "actually or reasonably" hold that opinion. *Nakkhumpun v. Taylor*, 782 F.3d 1142, 1159 (10th Cir. 2015). The SAC's allegations do not satisfy this standard.

First, Plaintiffs argue in the Opposition that PolarityTE's opinion statements that SkinTE was properly registered were false because the Company did not conduct a meaningful inquiry regarding Section 361 registration prior to registering SkinTE. This allegation is speculative. Plaintiffs cite no specific facts, or any confidential witness allegations, that would show a lack of inquiry.

3

Second, Plaintiffs concede that their allegations regarding Dr. Lough's strongly held belief about Section 361 registration illustrate the sincerity of his registration opinion. The only argument Plaintiffs offer regarding sincerity is the claim that unnamed "senior Executive Directors" decided in December 2019 to pursue a different registration path for SkinTE. However, the SAC offers no details—no specific dates of any meetings, no allegation that any Defendants participated in the rumored conversations. This fails the particularity standard. *See California Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 155 (3d Cir. 2004) ("Generic and conclusory allegations based upon rumor or conjecture are undisputedly insufficient to satisfy the heightened pleading standard").

But more importantly, businesses are allowed to discuss different strategies, and expressions of differing opinions by low-level employees concerning a novel regulatory issue does not mean that PolarityTE's registration opinion was false or misleading. This is the holding of *Exkae Ltd. v. Domo, Inc.*, 2020 WL 7352735 (D. Utah Dec. 15, 2020), cited in Defendants' opening brief. The only argument that Plaintiffs offer is to again reference vague conversations among non-executives. But the Supreme Court's decision in *Omnicare* specifically forecloses Plaintiffs' argument: an opinion statement is not misleading simply because there may be some facts "cutting the other way." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 189–90 (2015).

Allegations that the FDA ultimately disagreed with Defendants' registration opinion also fail to plead falsity. This is not a controversial point of law. *See Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 598 (S.D.N.Y. 2016) (collecting cases). Plaintiffs claim this principle does not apply because Defendants' opinion was "contradicted by facts Defendants suppressed." Opp. at 9. But the only "suppressed" fact Plaintiffs allege is that PolarityTE "transforms a patient's solid skin into a white, liquid paste," which in Plaintiffs' view means that PolarityTE substantially manipulates the patient's skin in violation of FDA guidance. SAC ¶¶ 73–75. There are three problems with this allegation.

First, the fact that SkinTE was administered as a paste was not "suppressed"—as Plaintiffs concede, it was disclosed in pictures in the Company's 10-K. SAC ¶ 75. Second, the mere fact that

4874-6615-6870.v3

SkinTE is administered as a paste does not show that it did not qualify for Section 361 registration. The FDA's guidance provides that "grinding the dermis into particles" is "generally … considered more than minimally manipulated." SAC ¶ 74–75. There are no facts showing that PolarityTE grinds skin into particles during the manufacturing process. Finally, even if the Court assumes that converting skin into a paste is analogous to "grinding the dermis into particles" and thus inconsistent with the FDA's guidance, this does not show that SkinTE's registration under 361 was improper. Not only is the FDA's guidance not binding law, the guidance is also equivocal in nature—it provides that grinding skin into particles would "***generally***" qualify as more than minimal manipulation, which indicates that there are exceptions. Plaintiffs' allegations are not enough to plead falsity.

**Form 483 Statements.** Plaintiffs have also failed to allege that statements regarding PolarityTE's manufacturing processes and SkinTE dosing were materially misleading. Plaintiffs allege that the "Form 483 statements" were misleading because they omitted reference to the July 2018 Form 483 observation that supposedly shows that PolarityTE did not have a potency assay for SkinTE.

First, the Court can dismiss the Form 483 statements because PolarityTE had no duty to disclose any information regarding its manufacturing processes or the dosing for SkinTE. The statements are variations of the general claim that the Company had good manufacturing practices in place. None of the statements refer to (a) the Form 483 observations, or (b) dosing for SkinTE. Because the statements were silent on those issues, they did not create a duty to disclose any information regarding the same.[1]

---

[1] The cases Plaintiffs cite in opposition only prove this point. In all three cases, the challenged statements specifically represented that the companies responded to FDA warning letters by addressing Form 483 observations. *Mulligan v. Impax Labs., Inc.*, 36 F. Supp. 3d 942, 967 (N.D. Cal. 2014); *City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, 2013 WL 566805, at *21 (N.D. Ill. Feb. 13, 2013); *In re Immucor, Inc. Sec. Litig.*, 2011 WL 2619092, at *1 (N.D. Ga. June 30, 2011). None of the Form 483 statements alleged in the SAC make such a representation.  Moreover, these cases also support the conclusion that the July 2018 Form 483 observations were immaterial. All three involved FDA warning letters about repeated regulatory violations, and the companies faced serious enforcement actions. There are no similar allegations here.

Second, the Court should dismiss the challenged statements because the Form 483 observations were immaterial. Courts have consistently held that Form 483 observations alone are insufficient to render general statements of compliance with FDA regulations misleading—the same type of statements challenged by Plaintiffs—and as explained in *Schaeffer v. Nabriva Therapeutics plc*, 2020 WL 7701463, at \*10 (S.D.N.Y. Apr. 28, 2020). Plaintiffs claim that Defendants misrepresent *Schaeffer*, but it is Plaintiffs who are disingenuous. Defendants never claimed that Form 483 statements are "per se" immaterial. Defendants explained that courts routinely hold that omission of Form 483 observations are immaterial because Form 483s do not represent final determinations. A company can be in compliance with regulations and on track for FDA approval even if it receives a Form 483.

Finally, the Court should dismiss all the Form 483 statements because Plaintiffs' theory of falsity depends entirely on a misrepresentation of the FDA's clinical hold letter. The only basis for Plaintiffs' allegation that the clinical hold resulted from a failure to correct the Form 483 observation regarding a potency assay for SkinTE is a citation to the hold letter. Opp. at 12–13. That letter, however, says no such thing. It merely expresses the FDA's disagreement with the potency assay that PolarityTE proposed in the IND application. Plaintiffs have nothing else to show falsity—no witnesses, no allegations of meetings or discussions, and no documents showing a purported lack of a potency assay between 2018 and 2021.

**FDA Enforcement Discretion Statement.** Plaintiffs challenge PolarityTE's statement to investors in April 2020 explaining that (a) the Company had decided to pursue an IND application for SkinTE based on "preliminary views expressed by FDA," (b) the FDA had not asked the Company to stop selling SkinTE as an HCT/P, and (c) that the Company would discuss with FDA whether sales could continue past the end of enforcement discretion. Plaintiffs allege that this statement was misleading because Defendants had already concluded by December 2019 that the Company would pursue Section 351 registration. Even taking this allegation as true, it does not show falsity.

First, the FDA's enforcement discretion policy allowed companies to sell a product as an HCT/P while they determined "if they need to submit an IND." Dkt. 54-7 at 21. Even if a company

6

determined that it needed to submit an IND, enforcement discretion still applied—sales were allowed while preparing an IND as long as there were no safety concerns.

Second, PolarityTE did not tell investors that it would have to convince the FDA that SkinTE was properly registered under Section 361 to continue sales—either before or after the end of enforcement discretion. The FDA allowed companies to market HCT/Ps during the enforcement discretion period even if the companies <u>knew</u> that Section 351 registration would be necessary. Thus, Plaintiffs are wrong when they claim that PolarityTE would have needed to convince the FDA that its Section 361 registration opinion was "correct" while it prepared its IND application. All that PolarityTE requested was the extension of enforcement discretion on an individual basis—*i.e.*, permission to continue sales while it prepared for Section 351 registration. Without an allegation that Defendants knew that the FDA would not allow continued enforcement discretion, the SAC does not plead falsity.

**Forward-looking Statements.** The Court should hold that the statements in ¶¶ 111, 128, 137, 140 and 142 are protected by the PSLRA's safe harbor because they are forward-looking and accompanied by meaningful, cautionary language. Plaintiffs argue that the statements are not forward-looking because portions reference Defendants' registration opinion. But the PSLRA safe harbor protects portions of forward-looking statements that provide "the assumptions underlying" management's plans for future operations. 15 U.S.C. § 78u-5(i)(1)(B), (D). For example, PolarityTE stated that it "believe[d]" its products were "appropriately regulated" under Section 361, allowing the Company to "begin commercializing quickly and effectively." SAC ¶ 111. References in ¶¶ 111, 128, 137, 140 and 142 to the Company's opinion are references to an assumption underlying future plans.

Thus, the statements are forward-looking. They are also accompanied by sufficient cautionary language. Plaintiffs half-heartedly claim that the cautionary language is not sufficient, but provide no specific examples from the appendix of cautionary language provided by Defendants, nor do they cite to any authority holding that similar disclosures were insufficient.  Finally, as explained throughout this reply and in Defendants' opening brief, Plaintiffs have not alleged actual knowledge of falsity.

7

**IV.     Plaintiffs Fail to Plead a Strong Inference of Scienter**

The Court should dismiss the SAC because Plaintiffs have not plead any particularized facts that give rise to a strong inference of scienter that is at least as compelling as the opposing inference in Defendants' favor. *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 321 (2007). There are no specific allegations regarding a motive on the individual Defendants' behalf, such as stock sales that show a personal financial motive to deceive investors. Without such allegations, the opposing inference in Defendants' favor is much more compelling—Defendants believed that Section 361 registration was appropriate for SkinTE, made a business decision to change course once the FDA expressed its disagreement, and believed the IND application would be approved.

**Section 361 Statements.** Plaintiffs pin their entire scienter theory with respect to the Section 361 statements on vague confidential witness statements. First, Plaintiffs point to the allegations regarding Dr. Lough. But Plaintiffs offer no response to the obvious and more compelling inference, which is that Dr. Lough had a sincere and steadfast belief regarding registration as the inventor of the product. Plaintiffs also fail to offer any particularized allegation regarding Dr. Lough's supposed recklessness. The SAC does not provide any details on the alleged conversations with Dr. Lough, such as <u>when</u> they occurred, or <u>why</u> the unnamed employees believed Dr. Lough's registration opinion was mistaken. Without those details, it is not reasonable to infer that Dr. Lough was reckless.

In fact, the only allegation of a specific conversation with Dr. Lough undermines Plaintiffs' fraud theory. Plaintiffs claim an investor recommended that PolarityTE prepare for clinical trials in case the FDA disagreed with the Company's registration opinion—which the Company ultimately did. But there is no allegation that the investor had a scientific opinion about the basis for registration that they expressed to Dr. Lough (or to anyone else).

Plaintiffs' allegations therefore support the opposing inference in Defendants' favor regarding scienter: Defendants believed, based on their understanding of how SkinTE is made and their consultations with experts, that Section 361 registration was appropriate but there was a possibility that the FDA could disagree with PolarityTE's registration opinion—a risk that employees understood

8

4874-6615-6870.v3

and discussed (and a risk that PolarityTE disclosed to investors). Those conversations are not evidence of fraud, they are evidence of a business grappling with complex legal, regulatory, and scientific issues.

**Form 483 Statements.** Plaintiffs do not offer any confidential witness statements regarding the potency assay or the July 2018 inspection of PolarityTE's manufacturing facilities. No witness claims that PolarityTE did not have a potency assay, or that any of the individual defendants knew based on the July 2018 inspection that a clinical hold would be placed on PolarityTE's IND application submitted three years later. The SAC also fails to offer any other particularized allegations regarding Defendants' scienter. In the absence of such allegations, the idea that Defendants knowingly submitted an IND application that requires a potency assay without fulfilling that requirement, thereby dooming the application to failure, is implausible.[2]

**FDA Enforcement Discretion Statement.** The scienter allegations regarding the FDA enforcement discretion statement fail for the same reason as the falsity allegations: the sincerity of Defendants' registration opinion is irrelevant because the "correctness" of SkinTE's registration status did not affect enforcement discretion, and nothing in the SAC alleges that Defendants knew that continued enforcement discretion for SkinTE sales was impossible at the time of the statement.

**Additional Scienter Allegations.** The remainder of the SAC's scienter allegations are the type of generic claims that apply to most businesses and executives.[3]  All companies want to stay in

---

[2] Plaintiffs argue that the cases Defendants cite do not apply because they involve products that were not on the market yet, but this is a distinction without a difference. Courts have uniformly rejected the idea that executives would "jeopardize FDA approval" for "expensive IND applications" by "excluding required, easily accessible information while also intentionally concealing this decision from the market." *Immanuel Lake v. Zogenix, Inc.*, No. 19-cv-01975, 2020 WL 3820424, at *12 (N.D. Cal. Jan. 27, 2020). That is exactly what Plaintiffs allege here—Plaintiffs claim that PolarityTE knew in July 2018 that it did not have a potency assay, had three years to correct the issue before submitting an expensive IND application for its flagship product, but decided to submit the application without the required potency assay, thereby causing a clinical hold. This theory of fraud is implausible.

[3] The "motive" cases cited by Plaintiffs are easily distinguishable. For example, in *Nguyen v. Radient Pharms. Corp.*, the Court held that allegations regarding the Company's financial condition established scienter only when considered in conjunction with the scienter of one of the individual defendants. 2011 WL 5041959, at *8 (C.D. Cal. Oct. 20, 2011). The individual defendant had scienter because he lied to investors and said that the company was conducting a clinical study with the Mayo clinic when it was not. *Id.* Here, Plaintiffs have offered no such allegations. Similarly, in *Frater v. Hemispherx*

9

4874-6615-6870.v3

business, raise capital, and make money for investors. For this reason, courts have held that these "motives" alone are not a basis for scienter. The remaining additional scienter allegations are also easily dismissed. The SAC does not allege with any particularity that Dr. Lough's departure from PolarityTE was related to SkinTE's registration status.[4]

The allegations regarding PolarityTE's size and its core operations also fail to raise a strong inference of scienter because they are not particularized to PolarityTE as required by the PSLRA's heightened pleading standard. Accepting Plaintiffs' argument means that all small companies have a motive to commit securities fraud. The Court should instead consider the compelling inference in Defendants' favor, as explained throughout Defendants' principal brief and in this reply.

**V.     Plaintiffs Fail to Plead Loss Causation**

As in their prior opposition brief, Plaintiffs entirely concede that the market was already aware of the Section 361 registration allegations, failing to even mention the term "Section 361" in the loss causation section. The Court can dismiss all the Section 361 statements on this basis alone.

The Court can also dismiss the other challenged statements for failure to allege loss causation. The disclosures only announced the materialization of previously announced risks—the end of enforcement discretion and a clinical hold. Investors already knew that such events could occur.

---

*Biopharma, Inc.*, 996 F. Supp. 2d 335 (E.D. Pa. 2014), the plaintiffs alleged much more than a need for capital. The individual defendants were alleged to have personal stock incentives that departed from "executives' typical compensation incentives." *Id.* at 350.  Finally, *In re Ibis Tech. Sec. Litig.*, 422 F. Supp. 2d 294 (D. Mass. 2006) does not involve similar facts. The statements at issue concerned prospects for selling certain assets, and Defendants knew based on their review of financial statements that the assets were essentially worthless but represented otherwise. *Id.* at 298–99. The court held that there were "no plausible explanations for the defendants' behavior that are as convincing as that they acted with scienter." *Id.* Here, the opposing inference in Defendants' favor is overwhelming.

[4] In both cases cited by Plaintiffs on this point, the plaintiffs plead with particularity that the terminations directly related to the subject of the allegedly false or misleading statements. *See In re Mammoth Energy Servs., Inc. Sec. Litig.*, No. CIV-19-522-J, 2021 WL 1851037, at *4 (W.D. Okla. Jan. 26, 2021) (firing of a president for alleged bribery created an inference of scienter on behalf of two other executives, who made statements regarding a contract allegedly obtained through the president's bribe); *In re WageWorks, Inc., Sec. Litig.*, No. 18-CV-01523-JSW, 2020 WL 2896547, at *7 (N.D. Cal. June 1, 2020) (involving the removal of executives involved in the issuance of allegedly false financial statements, which were the subject of the securities fraud lawsuit).

10

4874-6615-6870.v3

## VI.    Conclusion

For all the reasons stated above and PolarityTE's prior filings, the Court should dismiss the Second Amended Complaint with prejudice.

Dated this 23rd day of December 2022.

FOR THE DEFENDANTS:

/s/ *Jeffrey C. Corey*
Erik A. Christiansen
Jeffrey C. Corey
PARSONS BEHLE & LATIMER, LLP

Paul R. Bessette (admitted *pro hac vice*)
Michael J. Biles (admitted *pro hac vice*)
KING & SPALDING, LLP

*Attorneys for Defendants PolarityTE, Inc., David B. Seaburg, Jacob A. Patterson, Paul Mann, and Richard Hague*

11

4874-6615-6870.v3

## CERTIFICATE OF SERVICE

The undersigned attorney certifies that a true and correct copy of the foregoing was served upon all parties of record via the U.S. District Court for the District of Utah's Electronic Filing System on December 23, 2022.

/s/ *Jeffrey C. Corey*

12

4874-6615-6870.v3