# EXHIBIT A

# (Proposed Order)

ERIK A. CHRISTIANSEN, USB # 7372
JEFFREY C. COREY, USB # 09938
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, Utah 84111
Telephone: 801.532.1234
Facsimile: 801.536.6111
ecf@parsonsbehle.com
echristiansen@parsonsbehle.com
jcorey@parsonsbehle.com

PAUL R. BESSETTE
MICHAEL BILES
KING & SPALDING LLP
500 West 2nd Street, Suite 1800
Austin, Texas 78701
Telephone: 512.457.2050
Facsimile: 512.457.2100
pbessette@kslaw.com
mbiles@kslaw.com
(admitted *pro hac vice*)

*Attorneys for Defendants PolarityTE, Inc., David B. Seaburg, Jacob Alexander Patterson, Paul Mann, and Richard Hague*

## UNITED STATES DISTRICT COURT

## DISTRICT OF UTAH

| | |
|---|---|
| MARC RICHFIELD, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>POLARITYTE, INC., DENVER LOUGH, DAVID SEABURG, JACOB PATTERSON, PAUL MANN, and RICHARD HAGUE,<br><br>Defendants. | **[PROPOSED] MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT**<br><br>Case No. Case No. 2:21-cv-00561-BSJ<br><br>Hon. Bruce S. Jenkins |

i

Plaintiffs sued Defendants PolarityTE, Inc. ("PolarityTE"), Denver Lough, David Seaburg, Jacob Patterson, Paul Mann, and Richard Hague under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder. The Court granted Defendants' motion to dismiss the First Amended Complaint filed in this action and granted Plaintiffs leave to file a Second Amended Complaint to "set forth with specificity and simplicity which statements by Defendants are allegedly false, why the statements were false when made, who made the statements, and to whom the statements were made." Dkt. 74 at 1. The amended complaint fails to allege with the particularity required by the Private Securities Litigation Reform Act ("PSLRA") that Defendants made false or misleading statements to investors. It also fails to adequately plead the elements of scienter and loss causation. The Court therefore grants Defendants' motion to dismiss with prejudice.

## BACKGROUND

PolarityTE is a biotechnology company headquartered in Salt Lake City, Utah that develops regenerative tissue products, including a product called SkinTE™. Dkt. 54-1 at 1. The Plaintiffs' securities fraud claims are based on SkinTE's registration with the FDA, PolarityTE's biologics license application ("BLA") and investigational new drug ("IND") for SkinTE, and PolarityTE's sale of SkinTE pursuant to an enforcement discretion policy implemented by FDA from 2017 to 2021. Essentially, Plaintiffs claim that Defendants made false or misleading statements regarding (1) whether PolarityTE registered SkinTE using the correct regulatory pathway, (2) the components of PolarityTE's IND application, and (3) PolarityTE's ability to sell SkinTE based on FDA enforcement discretion.

### SkinTE, FDA Regulations, and Enforcement Discretion

PolarityTE's first regenerative tissue product is SkinTE, which is designed to repair and reconstruct skin in patients with chronic wounds, burns, surgical reconstruction events, scars, or who have had dysfunctional skin grafts removed. Dkt. 54-1 at 1. PolarityTE was founded by Defendant

Dr. Denver Lough, who invented the technology underlying SkinTE as an alternative to the dominant approach to wound care. Dkt. 54-2 at 3; Dkt. 54-5 at 3–4. SkinTE is designed to address the limitations of split-thickness skin grafts—the prevailing method of wound care—by using a sample of the patient's skin tissue to develop a custom product that promotes healing and regeneration of full-thickness skin. Dkt. 54-5 at 3–4, 7–8. PolarityTE claims that it has been able to collect a sample of skin from a patient that is 5 cm$^2$ or less and "produce enough SkinTE to treat a wound 30x greater in size than the skin collected." Dkt. 77 ¶ 131. The company cautioned investors, however, that additional work was needed to validate that real-world experience and understand the relationship between the size of a harvested skin sample and the ultimate dosage of SkinTE. Dkt. 77 ¶ 142.

SkinTE is subject to federal regulation as a human cell and tissue product ("HCT/P"). Dkt. 54-7 at 1. An HCT/P is an article that contains or consists of human cells or tissues and is intended for use by a human recipient. *Id.*; *see also* 21 C.F.R. § 1271.3(d). The Public Health Service Act ("PHSA") creates two pathways for registration of an HCT/P with the FDA. A company can self-register an HCT/P under Section 361 of the PHSA if the product meets the criteria set forth in 21 C.F.R. § 1271.10(a). Section 361 registration is appropriate where an HCT/P is "minimally manipulated," meaning that processing of tissue used in the HCT/P does not "alter the original relevant characteristics of the tissue relating to the tissue's utility for reconstruction, repair, or replacement." 21 C.F.R. § 1271.3(f).

Significantly, the regulations allow companies to determine whether a product meets the Section 361 registration requirements (including, for example, whether the HCT/P is minimally manipulated). Dkt. 54-8 at PDF p. 18. There is no provision in the PHSA or the implementing regulations that requires consultation with or approval by the FDA prior to Section 361 registration of a product. *Id.*

If a product does not meet the requirements for Section 361 registration, then it is subject to regulation as a biological product under Section 351, which requires premarket review and approval by the FDA. Dkt. 54-7 at 3, 22. Under Section 351, manufacturers must conduct clinical trials pursuant to an effective IND application or new drug application ("NDA"). Dkt. 54-8 at PDF p.18. Marketing of a biological product under Section 351 is not allowed without a biologics license issued by the FDA. *Id.*

PolarityTE registered SkinTE under Section 361 on August 14, 2017. Dkt. 77 ¶ 68. After registering SkinTE under Section 361, PolarityTE explained to investors that while it "believe[d]" that SkinTE was "appropriately regulated by the FDA" as a "Section 361" HCT/P, Dkt. 77 ¶ 111, FDA's regulation of HCT/Ps would likely evolve in the future and regulators could disagree with the company's assessment that SkinTE qualified for Section 361 registration. *See* Dkt. 80-2 at 12–13.

The FDA published final guidance regarding HCT/P regulations in late 2017. Dkt. 54-7. FDA announced at that time that it would exercise enforcement discretion and allow manufacturers to market an HCT/P under Section 361 even if the HCT/P did not meet all the requirements under 21 C.F.R. § 1271.10(a), as long as the use of the HCT/P did not raise safety issues. Dkt. 54-7 at 3, 21. The stated purpose of the enforcement discretion policy was to "give manufacturers time to determine if they need to submit an IND or marketing application." *Id.* at 21.

The FDA initially announced that it would exercise enforcement discretion until November 2020. Dkt. 54-9 at 22. But the Agency announced in July 2020 that it would extend the period of enforcement discretion through May 31, 2021 because of challenges caused by the COVID-19 pandemic. Dkt. 54-10 at 23. On April 21, 2021, FDA announced that it would not further extend the end of the enforcement discretion period past May 31, 2021. Dkt. 54-11.

**FDA Inspection of PolarityTE's Manufacturing Facility**

The FDA inspected PolarityTE's manufacturing facility in Salt Lake City from July 9, 2018 to July 13, 2018.  Dkt. 54-15 at 1.  The inspector identified potential violations of FDA manufacturing protocols, which were documented as "observations" in a Form 483 report.  Dkt. 54-15.  The Form 483 stated that observations did not "represent a final Agency determination regarding [PolarityTE's] compliance."  *Id.* at 1. The matter ultimately closed with a Voluntary Action Indicated ("VAI")[1] classification and regulators did not take any compliance actions against PolarityTE.  Dkt. 54-16 at PDF pp. 3, 6 .  Nevertheless, PolarityTE disclosed receipt of the Form 483 and its response to the FDA's observations.  Dkt. 54-5 at 16.

**PolarityTE's IND Application and Marketing of SkinTE**

On April 30, 2020, PolarityTE announced that it would seek registration of SkinTE under a different regulatory pathway, Section 351.  Dkt. 54-18 at 1.  The company explained to investors that this decision would require submission of an IND application for SkinTE and clinical trials for the product.  Dkt. 54-18 at 1.  The company disclosed that the decision followed informal and voluntary discussions with regulators regarding SkinTE's registration status.  *Id.*  FDA did not ask PolarityTE to stop marketing SkinTE under Section 361 or take any enforcement action.  Dkt. 54-9 at 22.

PolarityTE provided more detail on its decision to seek Section 351 registration in its May 11, 2020 10-Q filing.  *See* Dkt. 54-9 at 22, 33–36.  The company explained that it planned to discuss with the FDA the possibility of marketing SkinTE as a Section 361 HCT/P on a limited basis after the end of the enforcement discretion period, but cautioned that "it is not customary for the FDA to allow wide-spread commercial sales of a product subject to a pending BLA."  *Id.* at 22.  The Company

---

[1] A VAI classification means "objectionable conditions were found and documented but the agency is not prepared to take or recommend regulatory action."  Dkt. 54-17 at 1.

ultimately stopped marketing SkinTE in May 2021, the end of the enforcement discretion period.

PolarityTE submitted its IND application for SkinTE on July 23, 2021 for Section 351 registration. Dkt. 54-20 at 1. The company warned investors in a July 26, 2021 press release that the FDA could raise questions regarding the IND application, and "potentially [issue] a clinical hold if information requests or other issues are unresolved," at which point PolarityTE "would work with FDA in an effort to resolve any outstanding issues." *Id.*

PolarityTE announced on August 24, 2021 that the FDA placed a clinical hold on the IND application pending resolution of certain chemistry, manufacturing, and control ("CMC") items. Dkt. 54-21 at 1. PolarityTE submitted a response on December 17, 2021 and the FDA lifted the clinical hold in January 2022. Dkt. 54-22 at 1; Dkt. 54-23 at 1; Dkt. 54-24.

### PolarityTE I

The allegations raised by Plaintiffs in the instant case are highly similar to the allegations of *In re PolarityTE, Inc. Securities Litigation*, No. 2:18-cv-00510, 2020 WL 6873798 (D. Utah, Nov. 22, 2020) ("*PolarityTE I*"). The *PolarityTE I* plaintiffs also alleged that the company and its executives misrepresented that SkinTE was appropriately registered and regulated under Section 361 and that statements about PolarityTE's manufacturing facility were misleading because they failed to disclose the Form 483 observations. The *PolarityTE I* court determined that the Section 361 statements were not false or misleading because they were true when made (*i.e.*, SkinTE was, in fact, registered under Section 361) and the plaintiff failed to allege that the defendants' statements of opinion regarding the appropriateness of the Section 361 registration lacked any factual basis. *Id.* at *8–9. Regarding the statements about PolarityTE's manufacturing facilities, the court held that the Form 483 observations were not material and the company did not have a duty to disclose the observations. *Id.* at *10.

**LEGAL STANDARD**

The pleading standard for Plaintiffs' complaint is two-fold. First, Plaintiffs must satisfy the typical plausibility standard, which requires a complaint to allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads enough "factual content" to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged" in the pleading. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court is required to accept all the "well-pleaded factual allegations" as true and "construe them in the light most favorable to the plaintiff." *Id.* at 678–79. Allegations are well-pleaded where they are "supported by factual allegations" rather than "mere conclusory statements." *Id.*

In a securities fraud case, the allegations of the complaint must also satisfy the heightened pleading standard imposed by the Private Securities Litigation Reform Act ("PSLRA") and Federal Rule of Civil Procedure 9(b). The PSLRA requires plaintiffs to specify every statement alleged to be misleading with particularity and the reasons why each statement is misleading. 15 U.S.C. § 78u–4(b)(1)(B). The statute further requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind" with respect each statement or omission. *Id.* § 78u–4(b)(2)(A). And because the claims sound in fraud, the complaint must also satisfy Rule 9(b)'s requirement to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

**ANALYSIS**

Section 10(b) of the Securities Exchange Act and Rule 10b-5 promulgated thereunder make it unlawful for any person to make a false or misleading statement of material fact in connection with the purchase or sale of any security. 15 U.S.C. § 78j(b); 17 C.F.R. § 240.10b-5. These provisions

create an implied private cause of action for fraud in the purchase or sale of securities. *Hampton v. root9B Techs., Inc.*, 897 F.3d 1291, 1298 (10th Cir. 2018).

To state a claim for securities fraud, a private plaintiff "must prove that the defendants (1) made a material misrepresentation or omission; (2) with scienter; (3) in connection with the purchase or sale of a security; (4) upon which the plaintiff relied; (5) that the plaintiff suffered an economic loss; and (6) that the material misrepresentation was the cause of that loss." *In re Williams Sec. Litig.*, 558 F.3d 1130, 1136 (10th Cir. 2009).

For the reasons explained below, the Court concludes that Plaintiffs have not stated a claim under the federal securities laws because Plaintiffs have not pleaded with sufficient particularity and specificity that Defendants made material misrepresentations or omissions, that Defendants made the challenged statements with scienter, or that the statements challenged by Plaintiffs were the cause of plaintiffs' economic loss. The Court also dismisses certain statements challenged by Plaintiffs because they are protected by the PSLRA's safe harbor for forward-looking statements.

## I.    Falsity

The first element of a securities fraud claim is falsity—a material misstatement or omission. The PSLRA imposes a heightened pleading standard on plaintiffs with respect to the falsity element. To survive a motion to dismiss, a complaint must "specify each statement alleged to have been misleading" and "the reason or reasons why the statement is misleading." 15 U.S.C. § 78u–4(b)(1)(B). The statements challenged by Plaintiffs as false or misleading fall into three categories: (A) statements concerning SkinTE's registration under Section 361; (B) statements relating to PolarityTE's manufacturing processes and the dosing for SkinTE; and (C) a statement regarding FDA enforcement discretion and marketing of SkinTE. As set forth herein, the Court concludes that Plaintiffs have not satisfied the PSLRA's requirement to specifically plead the reasons why these statements were materially false or misleading.

### A.  Section 361 Registration Statements

The first category of statements challenged by Plaintiffs relate to PolarityTE's registration of SkinTE under Section 361.  *See* Dkt. 77 ¶¶ 111, 114, 121, 128, 140, 145.  Plaintiffs contend that these statements were false and misleading because they did not disclose that SkinTE was not properly registered under Section 361.  *See id.* ¶¶ 112, 115, 122, 129, 141, 146.  Defendants argue that all the statements were either (1) statements of opinion that were not materially false or misleading because Defendants actually and reasonably held the opinion, or (2) statements of fact that were true when made.  Defendants have the better of the argument.

### 1.  Opinion Statements

All but one of the Section 361 statements challenged by Plaintiffs are statements of Defendants' belief regarding the propriety of Section 361 registration.  *See* Dkt. 77 ¶¶ 111, 121, 128, 140, 145.  Prior to PolarityTE's announcement that it would seek Section 351 registration, the company told investors in its SEC filings, "We believe our FDA-registered SkinTE and OsteoTE products satisfy the applicable criteria for regulation as a 361 HCT/P and are therefore exempt from FDA requirements for premarket approval or clinical studies."  Dkt. 54-5 at 34, Dkt. 77 ¶ 121.[2]  And after announcing its change in regulatory strategy, the company stood by its opinion: "We still believe that SkinTE is appropriately regulated as a 361 HCT/P.  However . . . we believe that the FDA may disagree with our interpretation if we sought a formal designation of SkinTE's regulatory classification, and that it therefore is prudent to pursue a strategy to file an investigational new drug application ('IND') and thereafter a biologics license application ('BLA') for SkinTE."  Dkt. 54-9 at 33; Dkt. 77 at 140.[3]

---

[2] Similar statements are quoted in paragraphs 111 and 128 of the Second Amended Complaint.

[3] A similar statement is quoted in paragraph 145 of the Second Amended Complaint.

Plaintiffs do not contest that these are statements of Defendants' beliefs, and therefore their falsity allegations must clear the "higher pleading standard" for opinion statements. *Hampton v. root9B Techs, Inc.*, 897 F.3d 1291, 1299 (10th Cir. 2018). Plaintiffs cannot satisfy their burden by alleging "only that an opinion was wrong." *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S.Ct. 1318, 1332 (2015). Plaintiffs must allege particular facts showing that the speaker did not actually or reasonably hold the stated belief. *See Nakkhumpun v. Taylor*, 782 F.3d 1142, 1159 (10th Cir. 2015) (citing *Omnicare*, 135 S. Ct. at 1326–27).

Plaintiffs' falsity allegations do not meet this standard. First, Plaintiffs have not alleged with particularity that Defendants did not actually believe that SkinTE qualified for registration under Section 361. Plaintiffs claim that "Lough, and therefore PolarityTE, did not actually beileve [sic] SkinTE was properly registered under Section 361." Dkt. 77 ¶ 123. This allegation is conclusory. *See California Pub. Emps.' Ret. Sys. v. Chubb Corp.*, 394 F.3d 126, 155 (3d Cir. 2004) ("Generic and conclusory allegations based upon rumor or conjecture are undisputedly insufficient to satisfy the heightened pleading standard"). Plaintiffs do not cite to any document, conversation, or meeting that shows that Dr. Lough or any other executive did not sincerely believe that Section 361 registration was appropriate. To the contrary—Plaintiffs allege that Dr. Lough was adamant that Section 361 registration was appropriate for SkinTE, Dkt. 77 ¶ 78, and he "refused to acknowledge that SkinTE was registered under the wrong section." *Id.* ¶ 77. To state the obvious, these allegations do not advance the theory that Dr. Lough believed that Section 361 registration was inappropriate but represented otherwise to investors.

Plaintiffs then present the allegations of an unnamed low-level employee who claims that once Dr. Lough left PolarityTE, there were discussions of whether to change SkinTE's registration. *Id.* ¶ 93. The mere fact that conversations about SkinTE's registration status occurred does not demonstrate that PolarityTE's opinion statements were not sincere. And the confidential witness does

not claim that any of the individual Defendants were present at those meetings, let alone that PolarityTE executives were known to believe that Section 361 registration was not appropriate for SkinTE.    Thus, the allegations do not support a finding that Defendants did not sincerely believe that SkinTE qualified for Section 361 registration.

Plaintiffs have also failed to allege with particularity that Defendants' opinion about SkinTE's registration was not reasonably held.  To plead falsity under this theory, Plaintiffs must "identify particular (and material) facts going to the basis" of PolarityTE's opinion regarding Section 361 registration for SkinTE and show that omission of those facts made the "statement at issue misleading to a reasonable person reading the statement fairly and in context." *Omnicare*, 135 S. Ct. at 1332.  The complaint does not meet this burden.

Plaintiffs argue that PolarityTE's representations about its belief that Section 361 applied to SkinTE registration were misleading because the company "knew" that SkinTE was not minimally manipulated and omitted this fact from its statements.  *See* Dkt. 77 ¶¶ 112, 122, 129, 141 146.  But Plaintiffs have the burden to allege with particularity that "the real facts" about SkinTE "were not provided" to investors. *Omnicare,* 135 S. Ct. at 1328.  In other words, Plaintiffs need to plausibly allege that SkinTE is more than minimally manipulated, and that this fact was not disclosed to investors. Plaintiffs have not met this burden because they have presented only speculation about how SkinTE is made to show that the product is more than minimally manipulated, and that speculation is based on publicly available sources of information that investors were free to review.

Plaintiffs' claim that SkinTE is more than minimally manipulated is based on an example from an FDA guidance document, a picture from PolarityTE's 10-K, and a 2018 article by a stock analyst. *See* Dkt. 77 ¶¶ 74-76.  Plaintiffs try to argue that these materials prove that SkinTE is not minimally manipulated because they show that PolarityTE turns "solid skin" into a "paste" and allegedly combines skin with "a number of additives, including growth factors."   *See* Dkt. 77 ¶¶ 75, 122.

Plaintiffs further claim that PolarityTE "grinds" a patient's skin sample to convert it into paste, and then cite FDA guidance published in November 2017 stating that a grinding process would "generally" qualify as more than minimal manipulation. *Id.* ¶ 74.

These allegations are speculative and do not state a claim for securities fraud. First, Plaintiffs identify no particular facts to show that PolarityTE "grinds" a patient's skin sample or applies growth factors to create SkinTE, and instead offer only their interpretation of publicly available sources of information. Significantly, these sources are the same sources rejected by the *PolarityTE I* court. *See PolarityTE I*, 2020 WL 6873798, at *8 ("Given that neither Plaintiffs nor the articles they rely on can identify the processes used to create SkinTE . . . it is difficult to conclude that Plaintiffs have plausibly alleged that PolarityTE lacked any factual basis for its opinion statements.").

Second, the sources which Plaintiffs rely on—FDA guidance, PolarityTE's SEC filings, and news reports—were all available to investors and provided context for PolarityTE's opinion statements. Plaintiffs have thus failed to plausibly allege that PolarityTE omitted particular and material facts about SkinTE from its opinion statements and thereby rendered the statements misleading to a reasonable person reading them fairly and in context.

Plaintiffs also argue in their opposition brief that Defendants' opinion statements were false and misleading because they were not based on a meaningful internal inquiry and were contradicted by the company's decision to change its registration strategy. Plaintiffs have the burden to show that PolarityTE's "legal opinions" were not supported by "some meaningful legal inquiry." *Omnicare* at 1328. Nowhere in the complaint do Plaintiffs allege that PolarityTE failed to conduct a legal review of whether Section 361 registration was appropriate prior to registering SkinTE under that pathway. And while Plaintiffs allege that Dr. Lough was insistent that Section 361 applied, Plaintiffs do not allege that PolarityTE's attorneys or any other experts on FDA regulations advised Dr. Lough or the company that Section 361 registration was inappropriate. *See Omnicare*, 135 S.Ct. at 1329 (explaining

11

that one way to plead falsity of a statement of legal compliance is to allege that a company made the statement "in the face of its lawyers' contrary advice").

Instead, Plaintiffs allege that unnamed employees may have believed that SkinTE was registered under the "wrong" section, but this is not sufficient to plead falsity of the Section 361 opinion statements. Reasonable investors do not "expect that every fact known to an issuer supports its opinion statement." *Omnicare*, 135 S. Ct. at 1329. "Every business will have employees that disagree on the correct strategy," especially "in businesses involved in emerging technologies." *Exkae Ltd. v. Domo, Inc.*, No. 2:19-CV-781-DAK-DAO, 2020 WL 7352735, at *6 (D. Utah Dec. 15, 2020). The federal securities laws do not require companies to detail "every concern that every employee has." *Id.*

Just as debate among employees regarding SkinTE's registration status does not show that PolarityTE lacked a reasonable factual or legal basis for its registration opinion, neither does the expression of disagreement from the FDA during informal discussions about SkinTE's registration status. Plaintiffs "cannot state a claim by alleging only that an opinion was wrong" in the eyes of a regulator, their complaint must allege facts that "call into question the issuer's basis for offering the opinion." *Omnicare,* 135 S.Ct. at 1332. Plaintiffs have not alleged the particular reasons for the FDA's disagreement or any other specific facts that would undermine the basis for PolarityTE's registration opinion. The FDA's subsequent disagreement with Defendants' interpretation of the registration regulations does not mean that Defendants lacked any factual basis for their opinion at the time of the statements. *See PolarityTE I*, 2020 WL 6873798, at *9 (holding that the plaintiffs' allegations regarding the FDA's preliminary assessment did not support a finding that PolarityTE lacked any factual basis for its registration opinion). Neither does the company's change in business strategy to pursue Section 351 registration. *See In re Diebold Nixdorf, Inc. Sec. Litig.*, No. 19-CV-6180 (LAP), 2021

12

U.S. Dist. LEXIS 62449, at *31 (S.D.N.Y. Mar. 30, 2021) (holding that a company's "change in business strategy" does not render its "past disclosures" regarding its registration opinion misleading).

For these reasons, the Court holds that Plaintiffs have failed to adequately plead falsity for the opinion statements cited in paragraphs 111, 121, 128, 140 and 145 of the complaint.

### 2.  Statement of Fact

In addition to the statements phrased as opinions, Plaintiffs also challenge the following statement of fact from PolarityTE's 10-K filed with the SEC on January 30, 2018:

> Unlike products regulated by the FDA under the Federal Food, Drug, and Cosmetic Act (the "FD&C Act") and/or the Public Health Service Act as drugs, devices, or biologics, which require multi-phase clinical trials and premarket approvals, our SkinTE product is regulated by the FDA as human cells or tissues intended for implantation.

Dkt. 77 ¶ 114.

Plaintiffs allege that the statement was false because "SkinTE was regulated by FDA [under Section 351]" at the time of the 10-K filing. Dkt. 77 ¶ 115. Defendants argue that Plaintiffs have not sufficiently alleged falsity because the statement was literally true when made—on the date that PolarityTE filed the 10-K, SkinTE was self-registered with the FDA under Section 361 and was not subject to FDA regulations requiring multi-phase clinical trials and premarket approval as a result.

The Court agrees with Defendants. It is undisputed that the HCT/P scheme is one of self-registration. A company can choose which regulatory pathway to pursue, and a product is registered—and therefore regulated—under that section until the company or the FDA decide otherwise. It was therefore not false or misleading for PolarityTE to tell investors in January 2018 that SkinTE was not regulated as a drug, device, or biologic before the company chose to pursue Section 351 registration. *See PolarityTE I*, 2020 WL 6873798 at *8 ("The statements that SkinTE was registered under Section 361, all of which were published before . . . SkinTE's deregistration, were true. SkinTE was registered under Section 361 during the time when all these statements were made.").

**B.  Statements Regarding PolarityTE's Manufacturing Processes and SkinTE Dosing**

The second category of challenged statements concern PolarityTE's manufacturing processes and quality systems.[4]  Four of the statements come from PolarityTE's 10-K filings and represent to investors that PolarityTE has "manufacturing processes and quality systems" that allow the company to "receive a specimen, qualify the incoming tissue, process and manufacture the cell/tissue product, and perform ongoing quality control and assurance work prior to shipping."  Dkt. 77 ¶¶ 116, 119, 125, 147.

Two of the statements describe the dosing of SkinTE.  In PolarityTE's 2019 10-K, the company told investors that in "the application of SkinTE to date we have been able, when applicable to a particular case, to collect from a patient a skin tissue sample 5 cm$^2$ in size or less and produce enough SkinTE to treat a wound 30x greater in size than the skin collected."  Dkt. 77 ¶ 131.  In an investor call on November 9, 2020, Defendant Hague made the following statement:

> On the dosing side, the beauty of SkinTE has always been that we could take a relatively small harvest and treat significant open wound. We've proven that both in our real-world experience and pre-clinically, but we need to put just a little bit more work into categorizing that and validating that more specifically. So that ultimately, we can come to FDA and say that going forward, a harvest size of 'x' equates to a certain yield or dosage of product, which can then treat a certain wound size range of 'x' to 'y'. We need to do that a little bit more formally, as I've said, and to validate the work that we've done previously.

Dkt. 54-30 at 11, Dkt. 77 ¶ 142.

Plaintiffs allege that these statements were materially false and misleading because the Company failed to correct the issues identified by the FDA on Form 483 following its inspection of the Company's manufacturing facility in July 2018.  Dkt. 77 ¶¶ 116, 119, 125, 131, 142, 147.  According

---

[4] Plaintiffs refer to these statements as the "Potency Assay Statements."  Defendants call them the "Form 483 Statements."

to Plaintiffs, one of the Form 483 observations was that PolarityTE did not have a "potency assay,"[5] and that statements by the Company were materially false and misleading by omission of the same. Defendants argue that the Form 483 was immaterial, that the statements about PolarityTE's manufacturing processes did not create a duty to disclose, and that Plaintiffs have not sufficiently alleged that statements made after July 2018 were materially misleading by omission. The Court considers each argument in turn.

### 1. Materiality

Defendants' first argument is that all six statements should be dismissed because the Form 483 observations were not material and cannot form the basis of an omission claim under the federal securities laws. While Plaintiffs are correct that materiality is typically a jury question, "courts do not hesitate to dismiss securities claims pursuant to Rule 12(b)(6) where the alleged misstatements or omissions are plainly immaterial." *Grossman v. Novell, Inc.*, 120 F.3d 1112, 1118 (10th Cir. 1997).

An omission is "only material if a reasonable investor would consider it important in determining whether to buy or sell stock." *Id.* at 1119. The Court concludes that Plaintiffs have not adequately pleaded materiality under this standard.

Form 483 observations "do not represent a final [FDA] determination" regarding a company's compliance with laws and regulations. Dkt. 54-15 at 1. In the case of PolarityTE, the FDA closed the inspection with a Voluntary Action Indicated ("VAI") classification. Dkt. 54-16 at PDF p. 3. There is no indication that the FDA took further action against the company related to the Form 483 observations, including the observation that allegedly relates to a potency assay for SkinTE. Plaintiffs

---

[5] A potency assay measures the biological activity of a product, meaning its ability to produce a specific result. Dkt. 77 ¶ 84.

have not pleaded any facts suggesting that investors would view this type of regulatory non-event as presenting a "significant risk" to PolarityTE. *Matrixx Initiatives*, 563 U.S. at 47.

The facts that are alleged in the complaint also differ markedly from the cases cited by Plaintiffs in support of their materiality argument. In those cases, the plaintiffs alleged that the defendant companies received FDA warning letters about repeated regulatory violations and faced serious enforcement actions. *See City of Sterling Heights Gen. Emps.' Ret. Sys. v. Hospira, Inc.*, 2013 WL 566805, at *18 (N.D. Ill. Feb. 13, 2013) (holding that statements about compliance with FDA regulations in the defendant company's facilities "omitted material facts" about "serious issues with … quality control" that led to an FDA warning letter); *In re Immucor, Inc. Sec. Litig.*, 2011 WL 2619092, at *1 (N.D. Ga. June 30, 2011) (holding that non-disclosure of failure to comply with FDA regulations was a material omission where the FDA issued a warning letter to the defendant company and a notice of intent to revoke the company's biologics license). There are no similar allegations here.

For all these reasons, the Court concludes that Plaintiffs have not alleged that the Form 483 observations meet the materiality threshold required by Section 10(b) and Rule 10b-5.

### 2. Duty to Disclose

Defendants' second argument is that PolarityTE's statements about its manufacturing processes in its annual reports were too general to create a duty to disclose any alleged lack of a potency assay. *See* Dkt. 77 ¶¶ 116, 119, 125, 147. According to Defendants, the allegation that the Form 483 showed that PolarityTE lacked a potency assay can only be a basis for liability if PolarityTE had a duty to disclose the matter to investors.

Section 10(b) and Rule 10b-5 "do not create an affirmative duty to disclose any and all material information." *Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011). "Disclosure is required under these provisions only when necessary 'to make . . . statements made, in the light of the circumstances under which they were made, not misleading.'" *Id.* (quoting 17 CFR § 240.10b-5(b)). After reviewing

16

the statements challenged by Plaintiffs, the Court concludes that PolarityTE's statements about its manufacturing processes in its annual reports did not create a duty to disclose information regarding a potency assay for SkinTE.

In its annual reports, PolarityTE claimed that it had "designed and developed manufacturing processes and quality systems" to "receive a specimen," "qualify" the tissue, "manufacture" a tissue product, and "perform ongoing quality control and assurance work." In making a general statement about its manufacturing processes and capabilities, PolarityTE "did not incur a duty to discuss every factor bearing upon" those processes and capabilities. *Ind. Pub. Ret. Sys. v. Pluralsight, Inc.*, No. 1:19-cv-00128-JNP-DBP, 2021 U.S. Dist. LEXIS 64096, at *32 (D. Utah Mar. 31, 2021).

Plaintiffs have not alleged a plausible reason why the description about PolarityTE's manufacturing systems qualifies as an "affirmative statement" about a potency assay. *See TDC Lending Ltd. Liab. Co. v. Private Capital Grp., Inc.*, 340 F. Supp. 3d 1218, 1226 (D. Utah 2018) (holding that the plaintiff failed to allege that a loan summary sheet was misleading by omission of the fact that the defendant company had no underwriting guidelines for the loan where the plaintiff did not "point to any affirmative statement about underwriting" in the document). The statements do not reference a potency assay, nor do they make any claims about PolarityTE's response to the Form 483 observations. Thus, "there is no plausible basis to think that receipt of the Form somehow 'alters the meaning of the statement' made." *PolarityTE I*, 2020 WL 6873798 at *5 (quoting *Employees' Retirement System of R.I. v. Williams Cos., Inc.*, 889 F.3d 1153, 1164 (10th Cir. 2018))

Comparing the allegations of the complaint to the authority cited by Plaintiffs on this question only further highlights the failure of the complaint to allege a duty to disclose. In the cases cited by Plaintiffs, the challenged statements specifically represented that the defendants' manufacturing facilities complied with FDA regulations, and the plaintiffs alleged particular facts showing a lack of compliance. *See Mulligan v. Impax Labs., Inc.*, 36 F. Supp. 3d 942, 968 (N.D. Cal. 2014) ("Defendants

17

are alleged to have specifically represented to investors that they had undertaken significant manufacturing and quality control changes in their operations to rectify the issues highlighted by the FDA's Form 483s and Warning Letter."); *In re Immucor*, 2011 WL 2619092 at *1 ("The Plaintiff alleges that Immucor made false and misleading statements regarding its compliance with FDA regulations . . . ."). The annual report statements alleged in this case are much more general in nature and do not make similar representations regarding compliance with FDA regulations or PolarityTE's response to the Form 483.

Because PolarityTE's annual reports did not represent to investors that the company had a potency assay for SkinTE or otherwise comment on the Form 483 observations, the company was under no duty to disclose such information to investors to make the annual reports not misleading. Without a plausible duty to disclose, the Court must dismiss the statements cited in paragraphs 116, 119, 125, and 147 of the complaint.

### 3.   Potency Assay

Defendants' final argument is that Plaintiffs have not sufficiently alleged that statements made in 2020 and 2021 about PolarityTE's manufacturing processes and the dosing for SkinTE were materially misleading by omission. *See* Dkt. 77 ¶¶ 131, 142, 147. Plaintiffs allege that the statements were misleading by omission because the Form 483 and the clinical hold letter issued by the FDA show that PolarityTE did not have a potency assay for SkinTE. *See id.* ¶¶ 132, 143, 148. The Court concludes that Plaintiffs have not met their burden to allege that the challenged statements were materially misleading for two reasons.

First, even if the Court assumes for the sake of argument that one of the Form 483 observations shows that PolarityTE did not have a potency assay in July 2018, Plaintiffs have not met their burden to plead specific facts that show PolarityTE lacked a potency assay at the time the challenged statements were made in 2020 and 2021. The only allegation Plaintiffs offer in this respect

is a citation to the clinical hold letter received by PolarityTE in September 2021. *See* Dkt. 54-26. Plaintiffs cite to the following excerpt from the letter: "As we mention in our Pre-IND correspondence (sent Feb 4, 2021) and IR comment (sent August 5, 2021), a potency assay should assess the biological function that is relevant to the mechanism of action (MOA) of your product." Dkt. 77 ¶ 98. This is not a particular fact showing that PolarityTE did not have a potency assay in February 2021 or August 2021. The language quoted by Plaintiffs is a reference to the FDA's definition of a potency assay provided in prior correspondence.

Other portions of the clinical hold letter further contradict Plaintiffs' assertion that PolarityTE did not have a potency assay in 2020 or 2021. The letter suggests that the company had proposed a potency assay to FDA: "Please provide potency assay information . . . to show that your proposed potency assays will consistently reflect your product's relevant biological properties." Dkt. 54-26 at 2. The issue was not a lack of a potency assay, but whether the FDA agreed that "the proposed potency assay matrix" was appropriate. *Id.* at 1. Given the inconsistencies between the clinical hold letter and Plaintiffs' allegations, and considering that Plaintiffs have not offered any other specific facts to show that PolarityTE did not have a potency assay for SkinTE in 2020 or 2021, the Court concludes that Plaintiffs have failed to meet their burden to show that the statements in paragraphs 131, 142 and 147 were false or misleading when made.

Second, one of the challenged statements appears to disclose to investors the very information about SkinTE's potency assay that Plaintiffs claim was omitted. Plaintiffs cite the following statement from a November 9, 2020 investor call:

> On the dosing side, the beauty of SkinTE has always been that we could take a relatively small harvest and treat significant open wound. We've proven that both in our real-world experience and pre-clinically, but we need to put just a little bit more work into categorizing that and validating that more specifically. So that ultimately, we can come to FDA and say that going forward, a harvest size of 'x' equates to a certain yield or dosage of product, which can then treat a certain wound size range of 'x' to 'y'. We need to do that a little bit more formally, as I've said, and to validate the work that we've done previously.

Dkt. 77 ¶ 142.  Plaintiffs also claim that this statement was false and misleading "because PolarityTE lacked any adequate potency assay and therefore could not prove the appropriate dosage of SkinTE for a wound of a specific size."  *Id.* ¶ 143.  Plaintiffs' allegation is contradicted by the text of the statement, which tells investors that PolarityTE's needed to put "a little bit more work into categorizing" and "validating" the dosing for SkinTE.  For this reason, the Court is not convinced that Plaintiffs have met their burden to allege with particularity that the statements in paragraphs 142 and 147 of the complaint were materially misleading by omission.

## C.  FDA Enforcement Discretion Statement

The last category of challenged statements relates to the FDA's enforcement discretion policy for HCT/P.  In an April 30, 2020 press release, PolarityTE announced that it planned to pursue an IND application for SkinTE based on "preliminary views expressed by FDA."  Dkt. 77 ¶ 135.  The Company explained that the FDA "ha[d] not asked the Company to stop marketing SkinTE as a [HCT/P]" and that the product would "remain available under a limited sales and marketing program, subject to the Company's future discussions with FDA."  *Id.* ¶ 137.

Plaintiffs allege that the press release was false or misleading because it did not disclose (a) the substance of the FDA's preliminary views on SkinTE's registration or (b) that PolarityTE could only sell SkinTE until the end of FDA enforcement discretion.  The Court concludes that the statement was not materially misleading by omission on this basis.

First, Plaintiffs have not alleged a duty to disclose the FDA's "preliminary views."  The FDA never made an official determination regarding SkinTE's registration status, and PolarityTE was not required to disclose the details of the FDA's "interim feedback."  *See In re EDAP TMS S.A. Sec. Litig.*, 2015 WL 5326166, at *12 (S.D.N.Y. Sept. 14, 2015) (collecting cases for the proposition that there is no duty to disclose interim FDA feedback).

Second, a reasonable investor would not be misled by PolarityTE's statement that SkinTE would remain available "subject to the Company's future discussions with FDA" because the Company warned investors, "It is not customary for the FDA to allow wide-spread commercial sales of a product subject to the BLA." Dkt. 54-9 at 22. PolarityTE also advised, "We do not know, and cannot predict, whether FDA will allow us to continue selling SkinTE while our BLA is pending." Dkt. 54-10 at 23, Dkt. 54-19 at 25. Plaintiffs argue that the risk disclosures are not effective because company knew that FDA enforcement discretion would end in May 2021 and had already decided to seek Section 351 registration for SkinTE, but Plaintiffs do not cite any particular facts to show that Defendants knew the FDA would not allow PolarityTE to continue to sell SkinTE while its BLA was in progress. Without such facts, Plaintiffs have not met their burden to show that PolarityTE omitted information from its press release that was necessary to make the statement not misleading.

### D. PolarityTE's Risk Disclosures

The Court is also persuaded by Defendants' argument that the statements challenged by Plaintiffs are not false or misleading because PolarityTE disclosed all the information that Plaintiffs allege was material and concealed from the market. To prevail an on omissions theory of falsity, Plaintiffs must plead facts showing that Defendants failed to state a fact necessary to make a statement not materially misleading. *See* 15 U.S.C. § 78u–4(b)(1). The converse of this rule is that there can be no fraud claim where Defendants disclosed all material facts to investors.

With respect to SkinTE's registration status, PolarityTE warned that HCT/Ps were subject to an evolving regulatory regime and that the FDA or others may disagree with its registration opinion. Dkt. 54-2 at 36; Dkt. 54-8 at PDF p. 18; Dkt 54-9 at 34, Dkt. 54-12 at 13. When discussing the IND application for SkinTE, the company cautioned investors that chemistry, manufacturing, and control issues may arise and lead to a clinical hold. Dkt 54-1 at 18, 23; Dkt 54-9 at 34–35;Dkt. 54-20 at 3, 9, 13. PolarityTE also disclosed the Form 483 to investors and informed them that the company needed

21

to perform additional work on its potency assay.  Dkt. 54-1 at 22–23; SAC ¶ 142.  And, as discussed above, PolarityTE told investors that SkinTE sales would have to end in May 2021 in the absence of continued enforcement discretion.  Dkt. 54-1 at 1, 8, 24, 28, 39; Dkt. 54-10 at 23–24, Dkt. 54-19 at 25.

These disclosures are "fatal to plaintiffs' allegations that defendants deliberately withheld material information from investors." *In re Curaleaf Holdings, Inc. Sec. Litig.*, 519 F.Supp.3d 99, 107 (E.D.N.Y. 2021).  PolarityTE "publicly and repeatedly acknowledged the very information that plaintiffs contend it concealed" regarding SkinTE.  *Id.*  The Court concludes that PolarityTE's extensive disclosures are an independent reason to dismiss all the statements challenged in the complaint.  *See In re Progress Energy, Inc. Sec. Litig.*, 371 F.Supp.2d 548, 552 (S.D.N.Y. 2005) ("[T]here can be no omission where the allegedly omitted facts are disclosed.").

## II.    Forward-Looking Statements

Defendants have identified five statements in the complaint that they contend are protected by the PSLRA's safe harbor for forward-looking statements.  *See* Dkt. 77 ¶¶ 111, 128, 137, 140, 142.  After reviewing the statements and the accompanying cautionary language cited by Defendants, the Court agrees and dismisses the statements.

A statement is forward-looking where it concerns the "plans and objectives of management for future operations," and includes a statement "of the assumptions underlying" the plans and objectives of management.  15 U.S.C. § 78u-5(i)(1)(B), (D).  A forward-looking statement cannot be the basis for liability if it is either (1) identified as forward-looking and accompanied by meaningful cautionary language; (2) immaterial; or (3) made without actual knowledge that it was false or misleading.  *Id.* § 78u-5(c)(1).

Defendants argue that statements about PolarityTE's future business activities and potential action by the FDA regarding SkinTE's registration status and dosing are necessarily forward-looking.

22

*See* Dkt. 77 ¶¶ 111, 128, 140, 142.  Plaintiffs disagree, contending that the statements are not forward-looking simply because they reference future possible outcomes.  The Court agrees with Defendants.  The PSLRA safe harbor protects portions of forward-looking statements that provide "the assumptions underlying" management's plans for future operations. 15 U.S.C. § 78u-5(i)(1)(B), (D).  For example, PolarityTE stated that it "believe[d]" its products were "appropriately regulated" under Section 361, allowing the Company to "begin commercializing quickly and efficiently." Dkt. 77 ¶ 111.  References to the Company's registration opinion in the statements cited in paragraphs 111, 128, 137, 140 and 142 are references to an assumption underlying future plans.  *See, e.g.*, *In re Nuvelo, Inc., Sec. Litig.*, No. 07-4056, 2008 WL 5114325, at *15–16 (N.D. Cal. Dec. 4, 2008) (holding that the safe harbor applied to statements about a drug's "path to regulatory approval" and "commercialization" because they were predictions accompanied by sufficient cautionary language).

Plaintiffs also argue that the statements are not protected by the safe harbor because they are not accompanied by meaningful cautionary language.  The Court disagrees with Plaintiffs' characterization of the risk disclosures.  While Plaintiffs claim that the warnings "could apply to any product registered under 361," Plaintiffs provide no examples from the appendix of cautionary language provided by Defendants to illustrate this point, nor do they cite to any authority holding that similar disclosures were insufficient.  The Court finds that the disclosures cited by Defendants warned investors of the precise risk that Plaintiffs complain of in this case—the possibility that the FDA could disagree with PolarityTE's registration opinion or impose a clinical hold on the company's proposed clinical studies.  On this basis, the Court concludes that the statements in paragraphs 111, 128, 140, and 142 were accompanied by meaningful cautionary language

Defendants also argue that its statement regarding the possibility of continued FDA enforcement discretion was forward-looking.  Plaintiffs do not specifically challenge this assertion in their opposition brief, and the Court concludes that the statements are forward-looking because they relate to future FDA action on enforcement discretion.  *See* Dkt. 77 ¶ 137 ("SkinTE will remain

23

available under a limited sales and marketing program, subject to the Company's future discussions with FDA.")  And, as discussed above, PolarityTE warned investors that sales past the end of the enforcement discretion period were unlikely.  *See* Dkt. 54-9 at 22 ("It is not customary for the FDA to allow wide-spread commercial sales of a product subject to a pending BLA.").

The Court additionally finds that the PSLRA safe harbor applies to the forward-looking statements identified by Defendants because Plaintiffs have not alleged that Defendants had "actual knowledge of the falsity of their statements at the time the statements were made" or that they were severely reckless regarding the falsity of their statements.  *In re Gold Res. Corp. Sec. Litig.*, 957 F.Supp.2d 1284, 1298 (D. Colo. 2013).  This scienter requirement is higher than the requirement for statements of current fact.  *See id.* at 1297.

Plaintiffs' allegations regarding actual knowledge and severe recklessness are all variations of the conclusory assertion that Defendants "must have known" that their statements were false.  But Plaintiffs have failed to identify any particular facts showing how, why, or when Defendants possessed actual knowledge of the falsity of their forward-looking statements.  *See Schaeffer v. Nabriva Therapeutics plc*, No. 19-civ-4183, 2020 WL 7701463, at *10 (S.D.N.Y.  Apr. 28, 2020) (dismissing forward-looking statements regarding a company's new drug application (NDA) because plaintiffs did not sufficiently allege defendants actually knew that Form 483 issues would delay approval of the NDA); *In re Aratana Therapeutics Inc. Sec. Litig.*, 315 F. Supp. 3d 737, 761 (S.D.N.Y. 2018) (explaining that the plaintiffs failed to allege actual knowledge of the falsity of forward-looking statements where they offered no facts "suggesting that defendants knew, let alone when they knew" that there would be issues with the drug company's manufacturer, or that defendants "actually disbelieved their own estimates" regarding the commercialization timeline of a drug).

Regarding the Section 361 forward-looking statements, Plaintiffs have not alleged particular facts to show that Defendants knew that the FDA would disagree with its registration opinion. *See*

24

*Ratner v. Ovascience, Inc.*, 134 F. Supp. 3d 621, 632–33 (D. Mass. 2015) (holding that the plaintiffs failed to show actual knowledge regarding the defendants' forward-looking statements about a product's Section 361 registration in the absence of specific guidance that clearly indicated the product was not "minimally manipulated").  Similarly, Plaintiffs have not alleged facts showing how Defendants knew that the Form 483 issues would affect the company's IND application or that the FDA would not extend enforcement discretion for SkinTE beyond May 2021.  *See Schaeffer*, 2020 WL 7701463, at *10 (holding that the plaintiffs failed to show that the defendants actually knew that their forward-looking statements about the likelihood of FDA approval were false based on receipt of a Form 483); *Gold*, 957 F. Supp. 2d at 1298 (dismissing forward-looking statements where the plaintiffs did not plead how the defendants "should have known" that a particular outcome was "unattainable").

Plaintiffs have also failed to allege any facts that would show Defendants acted with severe recklessness with respect to the truth or falsity of their forward-looking statements.  A general allegation that Defendants should have reviewed certain information by virtue of their positions is not enough to show severe recklessness.  *See City of Phila. v. Fleming Cos.*, 264 F.3d 1245, 1264 (10th Cir. 2001); *Local No. 38 IBEW Pension Fund v. Am. Express Co.*, 724 F. Supp. 2d 447, 462 (S.D.N.Y. 2010) ("[B]land assertions that [defendants] 'would have received' such information offer nothing concrete and are not allegations of fact.").  Neither are "[v]ague allegations of disagreement and concern."  *In re Medicis Pharm. Corp. Sec. Litig.*, 689 F. Supp. 2d 1192, 1211 (D. Ariz. 2009).

Without these particularized facts, Plaintiffs cannot meet the heightened scienter standard for forward-looking statements and the Court must dismiss the statements in paragraphs 111, 128, 137, 140, and 142.

## III.   Scienter

The Court also concludes that Plaintiffs have failed to adequately allege the element of scienter.  Scienter means that a defendant acted with "intent to defraud or recklessness."  *Adams v. Kinder-Morgan,*

*Inc.*, 340 F.3d 1083, 1095 (10th Cir. 2003).  To establish scienter in an omissions case, "the plaintiff must demonstrate: (1) the defendant knew of the potentially material fact, and (2) the defendant knew that failure to reveal the potentially material fact would likely mislead investors."  *Fleming*, 264 F.3d at 1261.  "The requirement of knowledge in this context may be satisfied under a recklessness standard by the defendant's knowledge of a fact that was so obviously material that the defendant must have been aware both of its materiality and that its non-disclosure would likely mislead investors."  *Id.*

The PSLRA sets a high bar for pleading scienter.  Plaintiffs must plead particular facts giving rise to a "strong inference" of scienter.  15 U.S.C. § 78u–4(b)(2)(A).  A "strong" inference of scienter means one that is "more than merely plausible or reasonable—it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).

The Court addresses Plaintiffs' scienter allegations and the opposing inference presented by Defendants below, and ultimately concludes that Plaintiffs have not alleged a strong inference of scienter that is at least as compelling as the opposing inference of nonfraudulent intent in Defendants' favor.

The Court first observes that Plaintiffs have not alleged a plausible motive.  None of the individual Defendants sold unusually large amounts of PolarityTE stock at suspicious times during the Class Period, which is a classic indication of scienter.  *See Smallen*, 950 F.3d at 1310.  ("[S]uspicious insider stock trading is evidence of motive and weighs in favor of inferring fraudulent intent ….").  While Plaintiffs do allege that Defendants had a motive to defraud investors by citing to PolarityTE's efforts to raise capital and the compensation paid to executives, the Court is not convinced that these allegations raise a strong inference of scienter.  A desire to "present the company as successful, to facilitate corporate transactions, and to raise capital" are motives that are shared by all companies.  *Prissert v. Emcore Corp.*, 894 F. Supp. 2d 1361, 1373 (D.N.M. 2012).  Similarly, executive compensation

26

is a "generalized" motive that is not related specifically to PolarityTE "in particular." *Fleming*, 264 F.3d at 1269.

The Court is also unconvinced by Plaintiffs' other allegations of scienter relating to the individual Defendants. Take, for example, the allegations lodged against Dr. Lough. Plaintiffs assert that Dr. Lough's departure from PolarityTE in August 2019 shows that he knew SkinTE was improperly registered under Section 361. Dkt. 77 ¶ 166. But Plaintiffs do not specifically link his separation from the Company to SkinTE's registration status. Plaintiffs only speculate about the reason for his departure, which is not enough to raise an inference of scienter under the PSLRA's heightened standard. *See In re Amarin Corp. Plc., Sec. Litig.*, 2015 WL 3954190, at *13 (D.N.J. June 29, 2015) (holding that in the absence of any "specific facts" to suggest that executives resigned because of their allegedly false or misleading statements, the mere fact of their resignations was "insufficient to support a strong inference of scienter").

The confidential witness allegations cited by Plaintiffs to show Dr. Lough's knowledge or recklessness also fail to raise a strong inference of scienter. Plaintiffs do not allege that he admitted that the product did not qualify for Section 361, or any other particular facts that would show his knowledge. *See Kong v. Fluidigm Corp.*, No. 20-cv-06617-PJH, 2021 U.S. Dist. LEXIS 146155, at *36 (N.D. Cal. Aug. 4, 2021) (holding that statements by confidential witnesses about disagreement within a company "d[id] not establish a strong inference of scienter" because they "d[id] not relay any statements made by the individual defendants that are themselves indicative of scienter"). Plaintiffs have alleged only a strong and sincerely held belief that the product qualified for Section 361 registration despite the expression of differing opinions, which does not raise a strong inference of scienter on Dr. Lough's part. *See In re Amarin Corp. PLC.*, No. 13-cv-6663, 2015 WL 3954190, at *14 (D.N.J. June 29, 2015) (explaining that a confidential witness's statements did not raise a strong inference of scienter because they did not indicate that executives believed their statements to be

27

false—only that they were "optimistic" about a pharmaceutical product's potential for success "despite some concerns").

The scienter allegations relating to the other individual Defendants fare no better. As to Defendants Seaburg, Patterson, Mann, and Hague, Plaintiffs allege that they knew or were reckless in not knowing that SkinTE was registered under the wrong section. But Plaintiffs do not allege any particular facts to show that the Defendants had knowledge or were reckless in this respect. None of the confidential witnesses report conversations with any of these executives about SkinTE's registration. *See Kong*, 2021 U.S. Dist. LEXIS 146155, at *36 (holding that statements by confidential witnesses about disagreement within a company "d[id] not establish a strong inference of scienter" because they "d[id] not relay any statements made by the individual defendants that are themselves indicative of scienter").

And even assuming that discussions about SkinTE's registration status reached the executives by virtue of their positions, that still is not enough to raise a strong inference of scienter. In similar cases, courts have rejected the idea that mere "alleged knowledge of arguably material facts" shows intent to deceive or recklessness. *Weinstein v. McClendon*, 757 F.3d 1110, 1114 (10th Cir. 2014). Here, it is particularly difficult to conclude that discussions about changing SkinTE's registration status show intent to deceive or recklessness because the stated purpose of FDA's enforcement discretion policy was to "give manufacturers time to determine if they need to submit an IND or marketing application." Dkt. 54-7 at 21. Deliberation within PolarityTE about changing SkinTE's registration was consistent with FDA policy and does not raise a strong inference of scienter given this context.

Plaintiffs have also failed to raise a strong inference of scienter with respect to the Form 483 observations. Plaintiffs allege that because of their positions in the Company, some of the individual defendants must have discussed the Form 483 observations with the FDA, or otherwise been aware of the supposed issues. Dkt. 77 ¶¶ 165, 176, 181. But Plaintiffs do not allege with particularity that

28

the individual Defendants in fact spoke with the FDA or that they consciously disregarded risks that they knew would lead to a clinical hold on PolarityTE's IND application. *See Smallen*, 950 F.3d at 1307 (holding that the plaintiff failed to establish an inference of scienter where the complaint did not "plead any particular facts . . . tying the Individual Defendants" to the "red flags" that revealed issues with the company's compliance program). And, even if the Court assumes that the Form 483 shows that PolarityTE did not have a potency assay in July 2018, the clinical hold letter suggests that PolarityTE subsequently developed a potency assay for its IND application. This is contrary to an inference of recklessness because it contradicts Plaintiffs' allegations that PolarityTE did nothing to respond to the FDA's Form 483 observations.

Plaintiffs do not offer individualized scienter allegations for the FDA enforcement discretion statement and the Court is not convinced that Plaintiffs have raised a strong inference of scienter related to the statement. Plaintiffs do not plead any "particularized facts" showing that Defendants "intentionally misrepresented" the FDA's policy. *Smallen*, 950 F.3d at 1312. Plaintiffs also "do not allege that Defendants possessed any insider or confidential knowledge beyond what was publicly available" regarding FDA enforcement discretion, either as a policy or as applied to PolarityTE on an individual basis. *In re Egalet Corp. Sec. Litig.*, 340 F. Supp. 3d 479, 510 (E.D. Pa. 2018). Then there are PolarityTE's risk disclosures, which cut against an inference of scienter. The company warned that sales of SkinTE would end if FDA did not extend enforcement discretion or if PolarityTE could not secure approval for continued sales of SkinTE. *See* App. B at 24–27. Such "detailed disclosures negate any inference of scienter." *In re The First Marblehead Corp. Sec. Litig.*, 639 F. Supp. 2d 145, 163 (D. Mass. 2009).

The Court is also required to consider the nonculpable explanations for the Defendants' conduct and weigh them against the Plaintiffs' collective scienter allegations. *Tellabs*, 551 U.S. at 314.

29

This exercise leads the Court to conclude that Plaintiffs have not met their burden to raise an inference of scienter that is as least as compelling as the inference in Defendants' favor.

Plaintiff's scienter theory with respect to the Section 361 registration statements and the Form 483 statements is that Defendants knew all along that PolarityTE's key product was improperly registered with the FDA and chose not to fix issues that would inevitably preclude proper registration of the product once the company began the IND application process. This is a common allegation levied against pharmaceutical companies and it "has been addressed by numerous authorities, finding it implausible." *See In re Arrowhead Pharm., Inc. Sec. Litig.*, 2017 WL 5635422, at *12 (C.D. Cal. Sept. 20, 2017) (collecting cases). The idea that Defendants knew PolarityTE did not have a potency assay as required for Section 351 registration and still decided to submit an expensive IND application lacks plausibility. *See Immanuel Lake v. Zogenix, Inc.*, No. 19-cv-01975, 2020 WL 3820424, at *12 (N.D. Cal. Jan. 27, 2020) ("The hypothetical rationales proposed by plaintiffs for why defendants would jeopardize FDA approval . . . by excluding required, easily accessible information while also intentionally concealing this decision from the market simply do not hold water."); *Gillis v. QRX Pharma Ltd.*, 197 F. Supp. 3d 557, 600 (S.D.N.Y. 2016) (finding it "implausible" that a company "continued to invest substantial time and resources in . . . NDA submissions that it knew were doomed to fail").

The inference in Defendants' favor is simply more compelling: Defendants believed SkinTE was properly registered under Section 361 but made a business decision to pursue an IND application once the FDA expressed disagreement and hoped the application would succeed. *See, e.g.*, *In re Genzyme Corp. Sec. Litig.*, 754 F.3d 31, 42 (1st Cir. 2014) (finding it "more likely that defendants made no mention" of a Form 483 because they reasonably believed that the company was on a path to FDA approval for its drug candidate); *Angelos v. Tokai Pharm., Inc.*, 494 F. Supp. 3d 39, 60 (D. Mass. 2020) ("[I]t is more likely that defendants believed, or at least sincerely hoped, that the Phase 3 trial would

30

be successful than that they knew it would fail and concealed this fact from investors."); *Ratner*, 134 F. Supp. 3d at 631 (explaining that the Company could not "reliably predict" FDA's decision regarding "minimal manipulation" given the novelty of the technology used to develop the product and the limited guidance available). Given the strength of the nonculpable explanation for Defendants actions, and the lack of specific allegations in the complaint to show Defendants' intent or recklessness, the Court concludes that Plaintiffs have not met their burden to show a strong inference of scienter. *See In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1116 (10th Cir. 2015) (holding that the assertion that defendants "'must have known' of the misleading nature" of financial statements "because the company was small, produced only one product, and had only one buyer" did not establish a strong inference of scienter given a plausible opposing inference).

The Court therefore holds that Plaintiffs have not raised a strong inference of scienter as required by the PSLRA.

## IV.   Loss Causation

Defendants argue that Plaintiffs have not sufficiently alleged loss causation. The PSLRA "expressly imposes on plaintiffs 'the burden of proving' that the defendant's misrepresentations 'caused the loss for which the plaintiff seeks to recover.'" *Dura Pharm., Inc. v. Broudo*, 544 U.S. 336, 345–46 (2005) (quoting 15 U.S.C. § 78u–4(b)(4)). Plaintiffs assert a corrective disclosure theory of loss causation in this case. "Any reliable theory of loss causation that uses corrective disclosures" must show "both that corrective information was revealed and that this revelation caused the resulting decline in price." *Williams*, 558 F.3d at 1140.

Plaintiffs have not met their burden to allege that the PolarityTE press releases cited in the complaint revealed corrective information to the market. The press releases reiterated publicly available information and announced the materialization of risks previously disclosed in PolarityTE's

31

SEC filings. *See Lau v. Opera Ltd.*, 527 F. Supp. 3d 537, 559 (S.D.N.Y. 2021) ("Already-public information cannot constitute a corrective disclosure for purposes of alleging loss causation.").

The April 30, 2020 and May 11, 2020 press releases discussing PolarityTE's shift in business strategy are not corrective disclosures because investors were aware based on PolarityTE's prior risk disclosures that the FDA may disagree with PolarityTE's registration opinion. The May 13, 2021 press release announcing the end of SkinTE sales is not a corrective disclosure because Defendants told investors that FDA enforcement discretion would end on May 31, 2021 and the Company would have to stop selling SkinTE as a Section 361 HCT/P if the FDA did not extend enforcement discretion past that date. The August 24, 2021 press release is not a corrective disclosure because PolarityTE warned of the possibility that CMC issues may result in a clinical hold on its IND application.

For these reasons, the Court concludes that Plaintiffs have not med their burden to plead loss causation.

## V.    Control Person Claims

In addition to their Section 10(b) claim, Plaintiffs allege a violation of Section 20(a) of the Exchange Act against the individual Defendants. A prama facie case of control person liability requires Plaintiffs to demonstrate "(1) a primary violation of the securities laws and (2) 'control' over the primary violator by the alleged controlling person." *Maher v. Durango Metals, Inc.*, 144 F.3d 1302, 1305 (10th Cir. 1998). As Plaintiffs fail to establish a primary violation of the securities laws for the reasons set forth above, the Court dismisses the control person claims against the individual Defendants.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendants' motion to dismiss with prejudice.

\* \* \*

Dated _____, 2023.                    BY THE COURT:

_____

BRUCE S. JENKINS
United States District Judge